[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
These two personal injury cases were ordered consolidated for trial. During the jury selection process, all counsel agreed that the important CT Page 14745 and possibly dispositive legal issue raised by the defendants' special defenses should be addressed by the court by means of summary judgment motions prior to the commencement of trial.
The two cases involve a motorcycle accident which occurred on the evening of August 26, 1995, on Ridgewood Drive in Danbury, Connecticut. At the time, the plaintiff, Vincent Cassella (Cassella), was operating the motorcycle with plaintiff, Allyson Bernard (Bernard), as a passenger. The plaintiffs collided with a tree limb and branches that protruded into the travel lane of Ridgewood Drive, a public road, causing Cassella to lose control of the vehicle, which fell to the ground resulting in serious injuries to both Cassella and Bernard.
The defendants in both cases are Arthur and Jean Freitas, who reside at One Ridgewood Lane, and Ruth Effron, who resides at 3 Ridgewood Lane. The limb and branches involved in the collision grew from a tree and shrubs located on their properties.
Both plaintiffs allege that the collision and resulting injuries were caused by the negligence of the defendants, who are alleged to have: (1) allowed the limb and branches to protrude across the road, which affected visibility and safe passage, thereby creating a dangerous condition; (2) failed to inspect the tree and shrub growth; (3) failed to warn the plaintiffs of the condition; and (4) failed to remedy the unsafe condition. Each of the complaints alleges a single count against the defendants; the Cassella complaint alleges negligence, and the Bernard complaint alleges the defendants created a nuisance.
The defendants each filed a special defense in both cases to the effect that General Statutes §§ 23-59 and 23-65 remove their obligation to care for, trim or prune any limbs or branches which overhang a public road. The pertinent provisions of General Statutes § 23-59 provide:
 The town or borough tree warden shall have the care and control of all trees and shrubs in whole or in part within the limits of any public road or grounds and within the limits of his town or borough. . . . Such care and control shall extend to such limbs, roots or parts of trees and shrubs as extend or overhang the limits of any such public road or grounds. He shall expend all funds appropriated for the setting out, care and maintenance of such trees and shrubs. . . . He may prescribe such regulations for the care and preservation of such trees and shrubs as he deems expedient and may provide therein for a fine not exceeding ninety dollars in any one case for CT Page 14746 the violation of such regulations. . . . Whenever, in the opinion of the tree warden, the public safety demands the removal or pruning of any tree or shrub under his control, he may cause such tree or shrub to be removed or pruned at the expense of the town or borough and the selectmen or borough warden shall order paid to the person performing such work such reasonable compensation therefor as may be determined and approved in writing by the tree warden. Unless the condition of such tree or shrub constitutes an immediate public hazard, he shall, at least five days before such removal or pruning, post thereon a suitable notice stating his intention to remove or prune such tree or shrub. . . .
General Statutes § 23-65 provides:
 (a) Any person, firm or corporation which affixes to a telegraph, telephone, electric light or power pole, or to a tree, shrub, rock or other natural object in any public way or grounds, a playbill, picture, notice, advertisement or other similar thing, or cuts, paints or marks such tree, shrub, rock or other natural object, except for the purpose of protecting it or the public and under a written permit from the town tree warden, the borough tree warden, city forester or Commissioner of Transportation, as the case may be, or, without the consent of the tree warden or of the officer with similar duties, uses climbing spurs for the purpose of climbing any ornamental or shade tree within the limits of any public highway or grounds, shall be fined not more than fifty dollars for each offense.
The defendants moved for summary judgment seeking dismissal of the plaintiffs' claims in both cases. Following an agreed-upon expedited briefing schedule, oral argument on the motions was heard on November 3, 2000, at which time this court ruled on the motions and granted summary judgment for the defendants. Although the court briefly stated its reasons for the decision in open court, a more comprehensive written decision is in order.
I. THE REMEDY OF SUMMARY JUDGMENT
Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a CT Page 14747 matter of law. Practice Book § 17-49.
A material fact is a fact that would make a difference in the outcome of a case. United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364
(1969). The summary judgment procedure is designed to expedite the resolution of cases and reduce litigation expenses where there is no real issue to be tried. Wilson v. New Haven, 213 Conn. 277 (1989). The motion should be decided only after the court has viewed the evidence in the light most favorable to the non-moving party. Hertz Corp. v. FederalInsurance Co., 245 Conn. 374 (1998). The party moving for summary judgment has the burden of proving what the facts are and that there is no real doubt about the lack of any genuine issue as to any material facts. Miller v. United Technologies Corp., 233 Conn. 732 (1995). The party opposing summary judgment must do more than merely assert that there is a dispute as to material facts; it must submit some evidence that there is a genuine dispute. Daily v. New Britain Machine Co., 200 Conn. 562
(1986); Hertz Corp. v. Federal Insurance Co., supra.
II. DISCUSSION
A. The Duty of Care
The material facts of these cases are that the plaintiffs, Cassella and Bernard, were riding on a motorcycle on a public road in Danbury. They collided with and were struck by a tree limb and branches which extended over a portion of that road. The limb and branches were part of a tree or shrubs growing on land owned by either the Freitas' or Effron or both. These facts are not disputed by any party. It is also undisputed that Danbury has appointed a tree warden in accordance with the mandate of General Statutes § 23-58.
The Connecticut Supreme Court addressed the predecessors of §§ 23-59
and 23-65 in Muratori v. Stiles Reynolds Brick Co., 128 Conn. 674
(1942). In that case, the plaintiff was caused to fall off a truck by branches of a tree which overhung a highway, and he sued the owner of the land where the tree stood, a factual situation not unlike the present cases. The Supreme Court held that the two statutes read together "make it clear that the legislative intent was to rest exclusive control in the tree wardens of all trees standing within the limits of a highway or of any parts of trees extending within those limits, though the trees themselves stand on private grounds. . . ." Id., 675. The court concluded that since the tree branch which caused the accident was within the bounds of the road, the nuisance suit against the landowner could not stand, because the tree was in the exclusive control of the tree warden. Id. Lower courts have applied the Muratori reasoning to both nuisance and negligence cases. See Mode v. Nelson, Superior Court, judicial district CT Page 14748 of New Britain, Docket No. 493091 (February 18, 2000, Graham, J.); NutmegPaper Boxes Inc. v. Johnson, 17 Conn. Sup. 107 (1950).
Based on the foregoing, this court finds that even though the tree and/or shrub involved in this case may stand on the defendants' property, General Statutes §§ 23-59 and 65 vests the care and control, indeed, the exclusive control, of limbs or branches which extend over a public road with the municipal tree warden. The issue of whether the defendants owed a duty of care to the plaintiffs is a question of law and properly determined by the court in a summary judgment motion. Pion v.Southern New England Tel. Co., 44 Conn. App. 657 (1997). Therefore, the court holds that the defendants owed no duty of care to the plaintiffs with respect to the trees and shrubs on their property, and without such a duty, there cannot be any actionable negligence on their part. Watersv. Autori, 236 Conn. 820 (1996).
B. Constitutional Issue
The above analysis, however, does not complete the matter, because plaintiffs have raised the issue of the constitutionality of General Statutes §§ 23-59 and 65. Briefly stated, plaintiffs contend that under the above interpretation given these enactments, they are unconstitutional because they deprive the plaintiffs of their common law right of action against the defendant landowners, a right, it is argued, protected by article first, § 10, of the Connecticut Constitution[1]. To the best of this court's knowledge, this is an issue of first impression.
The plaintiffs bear a heavy burden of persuasion on this argument. It is axiomatic that there is a strong presumption that properly enacted statutes are constitutional. See, e.g., State v. Angel C., 245 Conn. 93
(1998).
It is well recognized by the Connecticut Supreme Court that article first, § 10, of the Connecticut Constitution protects rights derived from statute and the common law which were extant at the time the constitutional protection was adopted; i.e. the year 1818, when the language of article first, § 10, appeared in our Constitution. SeeGentile v. Altermatt, 169 Conn. 267, appeal dismissed, 423 U.S. 1041
(1976). In this case, the plaintiffs point out, correctly, that prior to 1818 there existed a recognized common law right to sue a landowner for injuries resulting from a dangerous condition on the land. However, the rights having constitutional protection are not immutable, nor are they carved in granite. They can be subject to reasonable conditions and regulations as are demanded by the public good. Curtis v. Gill,34 Conn. 49, 54 (1867). CT Page 14749
In the present case, General Statutes §§ 23-59 and 65, as interpreted, have transferred the duty of care with respect to trees and shrubs impinging on public roads from the private abutting landowners to the municipal tree warden. The plaintiffs contend this has extinguished their rights to sue the landowner. So it has, but the statutes have not extinguished the plaintiffs' right to sue and seek redress for their injuries, and it is redress for injury, not the right to sue a particular defendant, which is protected under article first, § 10.
Pursuant to General Statutes § 52-557n, a municipality may also be sued by individuals for injuries arising from negligence, and a municipality may also be sued pursuant to the defective highway statute, General Statutes § 13a-149. Plaintiffs contend that they cannot prevail in an action against a municipality if the municipality was negligent in the caring of trees and shrubs. However, their reliance in part on Roman v. Stamford, 16 Conn. App. 213 (1988) aff'd. 211 Conn. 396
(1989) for that proposition is not persuasive. That case is factually different in that the tree in question did not overhang the roadway. Id., 215. More importantly, the Roman courts did not address the question of liability under § 13a-149.
Nevertheless, the court is well aware that lawsuits for personal injuries under either §§ 52-557n or 13a-149 place different and perhaps additional burdens on plaintiffs. For instance, under the former statute, plaintiffs would have to prove that the duties of the warden were non-discretionary. In some circumstances, this could be a daunting task. See Amos v. Strickland, Superior Court, judicial district of Hartford-New Britain at New Britain, Docket No. 564328 (April 1, 1997Hennessey, J.) (holding that warden's duties were discretionary). On the other hand, it would appear to be a fair reading of § 23-59 that a warden with notice that tree branch directly obstructed travel on a road could be held to have only a ministerial duty to remove the hazard within a reasonable time.[2]
Under the defective highway statute, plaintiffs point out that they would have to establish that a municipality's violation of duty is the sole proximate cause of the injuries in order for a suit to succeed. SeePrato v. City of New Haven, 246 Conn. 638 (1998). It is established, however, that a plaintiff could recover if injury was due to an overhanging tree branch which obstructed travel. See Hewison v. NewHaven, 34 Conn. 136 (1867); Comba v. Ridgefield, 177 Conn. 268 (1979).
In this court's view, the differences and even the heightened difficulties that might be encountered in suits against municipalities do not rise to constitutional deprivation. The different burdens placed on CT Page 14750 plaintiffs who sue municipalities vis-a-vis other private parties are vestiges of the doctrine of sovereign immunity which predates even the action of trespass on the case (negligence) and existed long prior to 1818. See Burns v. Board of Education, 30 Conn. App. 594, rev'd on other grounds, 228 Conn. 640 (1994).
More importantly, our Supreme Court has held that the constitutional right to redress protected by article first, § 10, does not prohibit legislative abolishment or alteration of a certain right as long as a reasonable alternative exists. See Gentile v. Altermatt, supra. The determination of a claim of unconstitutionality must be based on an evaluation of whether "some form of legal recourse for injured parties is retained." Burkert v. Petrol Plus of Naugatuck, Inc., 216 Conn. 65, 73
n. 9 (1990). The fact that a plaintiff's right to redress under a statute such as § 13a-149 or § 52-557n is not co-extensive with the common law tort remedy against a landowner does not require a finding of unconstitutionality. See Sanzone v. Board of Police Commissioners,219 Conn. 179 (1991). While it is true that some provisions of §13a-149 or § 52-557n may bar a particular plaintiff from a remedy, this is not reason enough to find a statute unconstitutional. Id., 198. Thus, reasonable conditions on a cause of action is not a constitutional violation. See Shalley v. Danbury Bethel Horse Railway Co., 64 Conn. 381
(1894); see also Sanborn v. Greenwald, 39 Conn. App. 289 (1995).
In light of the foregoing, this court finds that plaintiffs have not carried the burden of persuasion as to the unconstitutionality of §§23-59 and 65. Therefore, those statutes validly switch the duty of care in this case to Danbury and absolve the defendants of any claims of negligence or nuisance. The defendants' motion for summary judgment is granted.
Adams, J.