SHARON MCDERMOTT *v.* CALVARY BAPTIST CHURCH ET AL.
(AC 20955)

Lavery, C. J., Mihalakos and Shea, Js.

Argued October 15, 2001—officially released February 19, 2002

*David A. Slossberg*, with whom, on the brief, was *J. Daniel Sagarin*, for the appellant (plaintiff).

*J. Kevin Golger*, with whom, on the brief, was *George L. Holmes, Jr.*, for the appellee (named defendant).

*James E. Coyne*, with whom, on the brief, was *Robert P. Murphy*, for the appellee (defendant town of Darien).

*Opinion*

SHEA, J. The plaintiff, Sharon McDermott, appeals from the judgment of the trial court, rendered after a jury trial, in favor of the defendants,[1] in an action to recover damages for personal injuries she sustained as a result of the defendants' alleged negligent maintenance of their property. On appeal, the plaintiff claims that the court improperly (1) failed to instruct the jury on the issue of agency, (2) failed to instruct the jury that the defendant town of Darien (town) had a legal duty to trim branches that overhung its property, (3) instructed the jury on the legal significance of a "no

---

[1] The town of Darien also is a defendant.

parking" sign at the scene of the accident and (4) failed to set aside the jury verdict on the ground that the verdict in favor of the defendants was against the weight of the evidence. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On July 26, 1994, the plaintiff drove to a municipal parking lot in Darien that served a number of local businesses, including a restaurant at which the plaintiff was planning to dine that evening. The parking lot bordered property owned by the defendant Calvary Baptist Church (church). A hedgerow of maple, ash and ailanthus trees, planted on the church property, stood along the boundary between the two properties. The plaintiff parked near the boundary and, when she exited her vehicle, an overhanging branch fell from one of the ailanthus trees and struck her on the head, knocking her to the ground and causing various injuries.

The plaintiff brought an action against the church and the town, alleging, inter alia, that the defendants knew or should have known that the subject tree posed a hazard and that the defendants were negligent in that they failed to take reasonable precautions to protect persons on the premises by failing to remedy that hazardous condition. The case was tried before a jury, which found that neither defendant had been negligent and returned a verdict in favor of both defendants. This appeal followed.

I

The plaintiff raises several claims challenging the propriety of the court's instructions to the jury. Our review of those claims is governed by well established standards. "A request to charge [that] is relevant to the issues of [a] case and [that] is an accurate statement of the law must be given. . . . However, [i]nstructions to the jury need not be in the precise language of a

request." (Citation omitted; internal quotation marks omitted.) *Scanlon* v. *Connecticut Light & Power Co.*, 258 Conn. 436, 445–46, 782 A.2d 87 (2001). "A refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance." (Internal quotation marks omitted.) *Bovat* v. *Waterbury*, 258 Conn. 574, 592, 783 A.2d 1001 (2001) "Moreover, jury instructions are to be read as a whole, and instructions claimed to be improper are read in the context of the entire charge. . . . A charge is to be considered from the standpoint of its effect on the jury in guiding it to a correct verdict. . . . The test to determine if a jury charge is proper is whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Jury instructions need not be exhaustive, perfect or technically accurate, so long as they are correct in law, adapted to the issues and sufficient for the guidance of the jury." (Internal quotation marks omitted.) *Scanlon* v. *Connecticut Light & Power Co.*, supra, 446.

## A

The plaintiff first claims that the court improperly failed to instruct the jury on the issue of agency.[2] The substance of the plaintiff's claim alleges that the court's instruction did not adequately inform the jury that the defendants could be found liable for the negligent acts or omissions of their agents.[3] We are not persuaded.

[2] The plaintiff requested that the following charge be delivered to the jury: "In various relationships between two or more parties, the law imposes liability upon one party for the acts of another. An agent is a person who, by agreement with another called the principal, manages some affair or does some service for the principal. Where an agency is established, the principal is liable for the acts of the agent committed on the principal's behalf.

"Agency means that the agent or servant is doing something for the benefit or furthering of the purposes of another party. It need not be a hired agent or servant on a salary or a definite contract. It's a question of whether what the agent or servant has done is for the benefit of the other party."

[3] We note that the existence of a principal-agent relationship between the church and the parishioners who maintained the trees on its behalf was not

With respect to the town, the record before us clearly indicates that the court explicitly charged the jury on the issue of municipal liability for the acts or omissions of the town's agents. Referring to General Statutes § 52-557n,[4] the court instructed the jury that: "A town shall be liable for damages caused by the negligent acts or omissions of any employee acting within the scope of his employment or official duties." Thus, the court provided the jury with clear guidance on the issue of agency with respect to the town's potential liability.

The court's charge to the jury with respect to the church also adequately instructed the jury to evaluate the actions of the church's agents in considering whether the church was liable for the plaintiff's injuries.[5] The jury was instructed not only that the church

disputed. Similarly, the town readily conceded that the tree warden operated as its agent.

[4] General Statutes § 52-557n (a) (1) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ."

[5] In discussing the church's obligations as a landowner, the court instructed the jury: "If an owner or possessor's actions or omissions create an undue risk to others, then there has been a deviation from the reasonable standard of care. Or, more fully, a duty to take reasonable care exists in circumstances where a reasonably prudent owner or possessor, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered would occur, if reasonable care weren't taken. . . . Now, a fallen tree claim might be pleaded solely on alleged outside visible damage or rot or decay. If this were all that were alleged here, a plaintiff would be burdened to show the following . . . that there were visible signs of decay or weakness of structure. And that the church failed to observe . . . but that reasonable care would have resulted in those signs being seen. Plaintiff would have to show that a closer look or a good inspection would have resulted in a remedy or advice to get remedy due to the extent of the decay or structural weakness being such to warrant that. And, of course, that actions weren't taken. Here, plaintiff has argued more and I'll mention it. Plaintiff argues that the architecture or shape of the tree, with a codominant stem, and its breed, being an ailanthus tree, and any history that the tree might have had were additional danger signals. So that it is for you to decide whether reasonable care by a tree owner would require a response to any or all factors. . . . I did mention to you

was obligated to inspect its property, but also that any examination conducted on its behalf would have to be reasonable under the circumstances. The required quality and thoroughness of any such inspection was, therefore, put before the jury as an issue to consider. The court's charge to the jury also indicated that any knowledge concerning possible hazardous conditions that would have been gleaned during a reasonable inspection should be imputed to the church.[6] Contrary to the plaintiff's assertion, the church, under that charge, could not avoid a finding of liability by pointing to the negligent acts or omissions of a third party acting on its behalf. The absence of the express term "agent" from the court's instructions did not alter the inquiry that the jury properly was charged to make. Therefore, after reviewing the charge as a whole, we conclude that the plaintiff was not prejudiced by the omission of the precise language that she requested and that the charge,

---

about the duty of reasonable care, for invitees on land, as a duty that would include inspecting your premises for dangers. . . . The duty of a landowner, controller, to invitees on the land includes the duty to reasonably examine his property. . . . Now, it is not claimed here that as a basic threshold, initial response as a landowner, that you have a climb up arborist examining the tree. It may have been something that might have been warranted later on if other evidence would have suggested it to the reasonably prudent landowner or not."

[6] As indicated, the court's charge to the jury correctly stated that "[t]he duty of a landowner . . . to invitees on the land includes the duty to reasonably examine his property." The court also instructed the jury that a property owner may be liable where, although defects went unnoticed, *reasonable care would have resulted in those signs being seen.*" (Emphasis added.)

The dissent argues that lurking within the shadows of the court's charge is the suggestion that a landowner may escape liability by delegating its duty to exercise reasonable care to a third party. Such a conclusion, however, contradicts the entire thrust of the court's charge to the jury. By instructing the jury to consider whether reasonable care would have revealed any alleged defect in the tree, the court implicitly instructed the jury to evaluate whether the actions of the church's agents were reasonable under the circumstances. If the jury found that the level of care exercised by those agents was unreasonable, it was bound by the court's charge to find that the landowner had failed to meet its duty.

as given, was sufficient to guide the jury in reaching a correct verdict.

## B

The plaintiff next claims that the court improperly instructed the jury on the town's obligation to remedy a hazard to the property line. The plaintiff claims that although the court charged generally on the duty of a landowner to keep its premises safe from hazard, the charge did not specifically advise that the town was required to remove a branch overhanging the property line.[7] The plaintiff also claims that the court's reference to the tree warden statute, General Statutes § 23-59, compounded the alleged instructional error and misled the jury by suggesting that the town merely was authorized, rather than required, to act to remedy a known hazardous condition. We disagree with both of those assertions.

Our review of the court's charge to the jury reveals that the court properly instructed the jury that the town had an affirmative duty to remedy hazards on its property caused by hazardous conditions on adjacent property.[8] In drawing the jury's attention to § 23-59, the court

---

[7] The plaintiff requested the following charge to the jury: "Where the limb of a tree owned by an adjoining landowner hangs over a party's property and creates a nuisance or hazard, that property owner has a duty to remove the limb up to the property line or take other possible action that will alleviate the nuisance or hazard. *McDermott* v. *Calvary Baptist Church* (order denying motion to strike, dated August 28, 1995) (*Thompson, J.*); *Robinson* v. *Clapp*, 65 Conn. 365 [32 A. 939] (1895). The property owner is obligated to take such steps whether or not it is the owner of the subject tree."

[8] In discussing the duty of reasonable care that the town owed to the plaintiff, the court stated: "[T]he duty that is owed by the town is the same as I've been describing for the church. The duty is the same. That is to keep the premises reasonably safe for those who are lawfully upon the premises. Now, each aspect here has that wrinkle that I mentioned before. . . . [F]or the town, the wrinkle had to do with the alleged danger being to a person on town property, but coming from above rather than out of the town's ground, so to speak. From the tree of another party, a bordering landowner. But the duty I mentioned is still the same. Safety for people lawfully on the premises. That is to say, the town's duty to keep its premises reasonably

specifically cautioned that the statute does not increase the town's duty, but was offered to establish that the town had the ability to respond to any potential hazard that it identified.[9] We conclude that the court's instruction was correct in law and was in accord with the substance of the plaintiff's requested charge.

## C

The plaintiff next claims that the court improperly instructed the jury on the legal significance of a "no parking" sign that was visible in one of the photographs of the subject tree. We disagree.

During its deliberations, the jury sent to the court a note inquiring about the no parking sign, which prompted the court to give the jury a supplemental instruction. The note from the jury read: "In exhibit D eight, there is a parking sign that states 'no parking.' It is located directly in front of the tree. Was this taken into consideration? And why was it never mentioned?" The plaintiff claims that the court should have instructed the jury that the sign had no legal significance.[10] Instead, the court suggested that the jury should

safe is not lifted from the town's shoulders by the fact that the tree belonged to the church. The duty of reasonable care would exist with regard to your premises whether the danger comes from below, above or adjacent to the property."

[9] The court charged the jury as follows regarding General Statutes § 23-59: "[General Statutes § 23-59] says the town tree warden shall have the care and control of all trees and shrubs, in whole or in part, within the limits of any public road or grounds. Such care and control shall extend to such limbs, roots or parts of trees and shrubs as extend or overhang the limits of any public road or grounds. And another provision in the statute says [that] whenever, in the opinion of the tree warden, the public safety demands the removal or pruning of any tree or shrub under his control, he may cause such tree or shrub to be removed or pruned at the expense of the town."

[10] We note that although the plaintiff objected to the supplemental instruction on the record, the record does not indicate that the plaintiff suggested an alternative instruction. We have, however, the supplemental charge to evaluate in light of the complete instructions to the jury. The record, therefore, is adequate to determine if the court's instruction was improper.

accord the same weight to the sign as it was accorded during the trial.[11]

As we previously stated, the standard of review of jury instructions is well settled. A reviewing court shall make an inquiry to determine whether it is possible that the instructions misled the jury. See *Scanlon* v. *Connecticut Light & Power Co.*, supra, 258 Conn. 445–46. "Of necessity, additional instructions given in immediate response to a request are more informal and expressed with less exactness than are studiously prepared formal charges . . . ." (Internal quotation marks omitted.) *State* v. *Williams*, 199 Conn. 30, 43, 505 A.2d 699 (1986). "Nevertheless, additional charges to the jury must state the law correctly and not be misleading . . . . To determine the correctness of a jury charge, the charge must be read as a whole, and judged by its total effect rather than by its individual component parts." (Citations omitted; internal quotation marks omitted.) *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 606, 662 A.2d 753 (1995).

The following additional facts are relevant to our consideration of the plaintiff's claim. The subject photograph was introduced into evidence, without any objection or request for a limiting instruction, for the purpose of showing the condition of the subject tree. In addition to the tree, the photograph also showed a sign that was in relatively close proximity to the tree. The sign read: "No Parking Loading Zone." The plaintiff apparently was oblivious to the presence of the no parking sign and the implication that it might raise for the jury.

---

[11] The court's supplemental instruction on the weight to be given to the matter of the no parking sign was: "The best thing for me to say to you is that '[i]t would be appropriate for you to consider that this is a piece of information mentioned in no question, answer, pleading or argument, and to say it deserves somewhat similar consideration by you.' I'm not sure that that was read sounding clearly. I'm stating that if it garnered that little attention in the questions and answers and pleadings and arguments, maybe that's what it ought to be accorded by you. Okay?"

Evidence admitted without objection remains evidence in the case subject to any infirmities due to its inherent weaknesses. *Danahy* v. *Cuneo*, 130 Conn. 213, 217, 33 A.2d 132 (1943). Such evidence is "available for whatever it [is] worth upon its face. . . . Its value [is, however,] limited to its natural probative effect." (Citations omitted; internal quotation marks omitted.) Id.

The implication of the court's response to the jury's query was that because the sign was not mentioned by the parties, its relevance was minimal. Although the court's instruction was not phrased as artfully as it could have been, its essence was that the jury should disregard the sign. Therefore, we conclude that the instruction was correct in law and that it is not reasonably possible that the jury was misled.

## II

The plaintiff's final claim is that the court improperly denied her motion to set aside the verdict because the verdict in favor of the defendants was against the weight of the evidence. We disagree.

The plaintiff bases her claim on the general agreement among the witnesses that ailanthus trees are a poor choice for street-side planting, being relatively brittle and prone to shedding branches, and the testimony of the town's tree warden that he had never inspected the subject tree.

"In reviewing a court's refusal to set aside a verdict, we apply an abuse of discretion standard. . . . The evidence is viewed in a light most favorable to the prevailing party and to sustaining the verdict. . . . We accord great weight to the court's decision and indulge every reasonable presumption in favor of its correctness. . . . We must determine whether the jury reasonably could have concluded, on the basis of the evidence

and reasonable inferences drawn from that evidence, that the verdict . . . was proper. . . .

"A court is empowered to set aside a jury verdict when, in the court's opinion, the verdict is contrary to the law or unsupported by the evidence. . . . A verdict should not be set aside, however, where it is apparent that there was some evidence on which the jury might reasonably have reached its conclusion." (Citations omitted; internal quotation marks omitted.) *Ipacs* v. *Cranford*, 65 Conn. App. 441, 443–44, 783 A.2d 1044 (2001).

On the basis of our review of the record, we conclude that the jury reasonably could have found that the defendants, either as principals or through their agents, did not violate the applicable standard of care and were not negligent with respect to the maintenance of their property.

"A possessor of land has a duty to an invitee to reasonably inspect and maintain the premises in order to render them reasonably safe. . . . In addition, the possessor of land must warn an invitee of dangers that the invitee could not reasonably be expected to discover." (Citation omitted.) *Morin* v. *Bell Court Condominium Assn., Inc.*, 223 Conn. 323, 327, 612 A.2d 1197 (1992). "An occupier of land is chargeable with constructive notice of defects when dealing with invitees. . . . The determinative question is whether the defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have discovered it and remedied it." (Citation omitted; internal quotation marks omitted.) *Kurti* v. *Becker*, 54 Conn. App. 335, 338–39, 733 A.2d 916, cert. denied, 251 Conn. 909, 739 A.2d 1248 (1999). Thus, to establish liability for an injury caused by a falling tree limb, a plaintiff must establish that the landowner had either actual or constructive notice of the limb's defective

condition. A landowner, however, does not have a duty to examine its trees constantly for nonvisible decay. 62A Am. Jur. 2d, Premises Liability § 690 (1990).

The jury in this case found that the defendants were not negligent. It heard substantial testimony that could have supported a finding that the defendants lacked both actual and constructive knowledge of any defective condition of the tree limb that injured the plaintiff. Anthony Gibson, testified that in his twenty-six years as pastor of the church, he had never received any complaints about the trees. He also testified that through the years, two parishioners, Brian M. Maher and Don Miller, regularly had maintained the trees.[12]

Maher, a licensed arborist, testified that he worked on the trees from 1986 through 1994. He testified that during the period from 1991 to 1994, he climbed the trees approximately twice a year and performed maintenance such as removing dead limbs and opening up the crowns. Maher stated that if he noticed a problem with any of the trees that he could not handle himself, he would inform Gibson of the problem.

Jeffrey O'Brien,[13] a professional arborist, testified that the subject tree had an abundance of leaves, that those leaves possessed the proper color and form, that he did not notice any insect infestation or decay and that the stem that fell appeared to be in very good health. O'Brien also testified that although the interior of the stem contained some discoloration that was indicative of rot or decay, that decay was surrounded by two to four inches of healthy wood and would not have been

---

[12] Maher and Miller, the owner of an independent tree service, maintained the trees. There is no evidence in the record before us that Miller was called as a witness by either party.

[13] O'Brien had occasion to view the subject tree after he had been called by the church to remove one ash tree and one maple tree in the hedgerow. Upon his arrival, he also was asked to remove the ailanthus tree and did so.

visible from the exterior. He further indicated that the decay did not appear to reach the v-crotch where the tree failed. The witness also testified that neither the architecture of the subject tree nor the mere fact that it was an ailanthus would require that remedial measures be taken without some other evidence of potential problems.

The tree warden for the town, Marshall Cotta, testified that although he had never formally inspected the tree, he had observed it on many occasions and had never noticed any physical signs of decay or indications that the tree was unhealthy. He stated that the tree looked healthy and appeared to have been cared for by the church. Cotta further testified that although the ailanthus tree is not a popular variety for street-side planting and that the professional literature discourages the planting of such trees on a street or by a parking lot, he would not recommend removing preexisting trees simply because of their proximity to a subsequently constructed roadway or parking lot.[14]

The fact that a limb fell from the tree did not require the jury to find that either or both of the defendants were negligent. The plaintiff had the burden of proving that the defendants had either actual or constructive knowledge of the tree's defective condition, and the jury reasonably could have found, on the basis of the evidence presented, that she did not satisfy that burden. We conclude, therefore, that the court properly determined that the evidence was sufficient for the jury to

---

[14] Despite the plaintiff's attempt to characterize the ailanthus' brittleness and tendency to shed branches as incontrovertible evidence of their hazardous nature, the jury reasonably could have found that the testimony on that point did no more than establish that such trees are "messy." Accordingly, the jury could have concluded that the widespread admonition against planting ailanthus trees was motivated primarily by aesthetic, as opposed to safety, concerns.

decide as it did in rendering its verdict in favor of the defendants.

The judgment is affirmed.

In this opinion LAVERY, C. J., concurred.

MIHALAKOS, J., dissenting. I respectfully disagree with the majority and would reverse the judgment of the trial court. I believe that the majority incorrectly concludes that the court's jury instruction was correct in law and that the plaintiff was not prejudiced by the charge.[1]

As the majority has already stated, when a party claims that a jury charge was incorrect, we review the charge in its entirety to determine whether the charge fairly presents the case to the jury under the established rules of law such that no injustice will result to either party. After reviewing the charge in its entirety, the majority concludes that "the plaintiff was not prejudiced by the omission of the precise language that she requested and that the charge, as given, was sufficient to guide the jury in reaching a correct verdict." I believe that she was prejudiced because without instruction about the law of agency, the jury did not have the opportunity to determine whether the defendants' agents had actual or constructive knowledge of the dangerous condition, and, therefore, did not have the opportunity to decide if any such knowledge should be imputed to the defendants.[2]

---

[1] At the outset, I would like to note that the "overhanging branch" that fell and struck the plaintiff was one of two stems of a coterminous tree, and the stem was thirty to forty feet in length.

[2] The majority notes that both defendants concede that a principal-agent relationship existed. Although the existence of a principal-agent relationship is a threshold question that must be addressed, the inquiry does not stop there. Once the relationship has been established, the jury must determine whether the agent was negligent and, if so, whether his negligence should be imputed to the principal.

"Agency normally is a question of fact. . . . [T]he three elements required to show the existence of an agency relationship include: (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking. . . . *A principal is generally liable for the authorized acts of his agent . . . .*" (Citation omitted; emphasis added; internal quotation marks omitted.) *Federal Deposit Ins. Corp.* v. *Mutual Communications Associates, Inc.*, 66 Conn. App. 397, 402, 784 A.2d 970, cert. granted on other grounds, 258 Conn. 949, 788 A.2d 98 (2001). Furthermore, "[t]he acts of an agent are imputed to his principal, and a principal may not use his agent as a shield when the agent acts within the bounds of his authority. See *Son* v. *Hartford Ice Cream Co.*, 102 Conn. 696, 700–701, 129 A. 778 (1925); *Mullen* v. *Horton*, 46 Conn. App. 759, 764, 700 A.2d 1377 (1997)." *Kallas* v. *Harnen*, 48 Conn. App. 253, 260 n.5, 709 A.2d 586, cert. denied, 244 Conn. 935, 717 A.2d 232 (1998). "The general rule . . . is that the principal is chargeable with, and bound by, the knowledge of or notice to his agent received while the agent is acting as such within the scope of his authority and in reference to a matter over which his authority extends. The fact that the knowledge or notice of the agent was not actually communicated will not prevent the operation of the general rule, since the knowledge or notice of the agent is imputed to the principal and is therefore constructive notice . . . ." 3 Am. Jur. 2d, Agency § 281 (1986). "The knowledge of his agent with respect to defects in a building may be imputed to a landlord." Id. "The rule charging the principal with his agent's knowledge is not necessarily restricted to matters of which the agent has actual knowledge, and . . . the principal is charged with the knowledge of that which his agent, by ordinary care, could have known,

especially where the agent has received sufficient information to awaken inquiry." Id., § 285.

With respect to the town, the majority reasons that by reading the text of General Statutes § 52-557n, the court "provided the jury with clear guidance on the issue of agency with respect to the town's potential liability."[3] This reasoning is, however, flawed. First, the court referred to § 52-557n to explain the concept of governmental immunity.[4] Section 52-557n abrogates the doctrine of governmental immunity only in certain delineated circumstances. In addition, the court read the text of the tree warden statute, General Statutes § 23-59.[5] Because § 23-59 contains discretionary language and the court instructed that the town was not liable for the discretionary acts of its agents, I do not believe that merely reading the text of § 52-557n fairly

[3] The court's charge to the jury states in relevant part: "[General Statutes § 52-557n] says [that] a town shall be liable for damage caused by negligent acts or omissions of any employee acting within the scope of his employment or official duties. Negligence in the pro forma functions from which the town derives a special corporate profit or benefit. *The town shall not be liable for damages caused by negligent acts or omissions which require the exercise of judgment or discretion.*" (Emphasis added.)

[4] By answer dated December 31, 1998, the town asserted governmental immunity as a special defense. The jury never decided the issue of governmental immunity because it found that the town was not negligent.

[5] The court's charge to the jury states in relevant part: "I'm going to give [the tree warden statute] to you for two reasons. You will be able to weigh or consider this tree warden statute as you weigh . . . whether the negligence or reasonable care issues have been established. And it may also help you to see or to consider that the town would not have been . . . without the ability . . . to move against the tree that they thought was hazardous. . . . [General Statutes § 23-59] says the town tree warden shall have the care and control of all trees and shrubs, in whole or in part, within the limits of any public road or grounds. Such care and control shall extend to such limbs, roots or parts of trees and shrubs as extend or overhang the limits of any such public road or grounds. And another provision in the statute says [that] whenever, *in the opinion of the tree warden,* the public safety demands the removal or pruning of any tree or shrub under his control, he may cause such tree or shrub to be removed or pruned at the expense of the town." (Emphasis added.)

presents the issue of agency to the jury. While I am aware that a charge to the jury is be read as a whole and that individual instructions are not to be evaluated in isolation from the overall charge, I believe that the concept of agency was not properly before the jury because of the flawed instruction.

With respect to the church, the majority reasons that the charge was adequate for the jury "to evaluate the actions of the church's agents in considering whether the church was liable for the plaintiff's injuries." I do not agree. The portion of the charge to which the majority cites is limited to the duty of a landowner. See footnote 5 of the majority opinion. The court instructed that "[t]he duty of a *landowner*, controller, to invitees on the land *includes the duty to reasonably examine his property*. . . . Now, it is not claimed here that as a basic threshold, initial response as a landowner, that you have a climb up arborist examining the tree. It may have been something that might have been warranted later on if other evidence would have suggested it to the reasonably prudent landowner or not." (Emphasis added.) This charge allows the jury to find that the church was not negligent because it had an arborist maintaining and examining the property regardless of whether the arborist was negligent in his maintenance. Hence, the charge provides no guidance to the jury in its evaluation of the actions of the agent in the consideration of liability. Rather, the practical effect of the charge is to allow the church to use its agent as a shield, which the law of agency does not condone.

Furthermore, the court's charge regarding notice was also deficient.[6] The court instructed the jury regarding

---

[6] The court's instruction to the jury states in relevant part: "If you were to determine in this case against either defendant that there was no condition that was known or should have been known to be hazardous or dangerous, then there would have to be a verdict for the defendant or defendants, on that issue or in this case. Now, there's two kinds of notice here. You recall, I've mentioned a couple of times now, that a defendant can only be held liable if you conclude that he had notice of the problem, or a problem, in

actual and constructive notice of the *defendants*. The court did not instruct the jury regarding actual or constructive knowledge of the agent. Moreover, the court did not instruct the jury that if it found that the agent had knowledge of the defect, such knowledge could be imputed to the defendant and thereby fulfill the notice requirement. Although I agree with the majority that "[t]he absence of the express term 'agent' from the court's instructions did not alter the inquiry" for the jury, I believe that the complete omission of the entire law of agency did alter the inquiry, and, therefore, the jury was not properly charged.

In part II of its opinion, the majority notes that the "jury in this case found that the defendants were not negligent," and "heard substantial testimony that could have supported a finding that the defendants lacked both actual and constructive knowledge of any defective condition of the tree limb that injured the plaintiff." The jury did hear such testimony, but only in the light of the flawed charge. The testimony, however, also supported a finding that the defendant's agents may have been negligent and, without a proper charge on the law of agency, the jury could not find that the agents had actual or constructive knowledge, nor could it find that the agents' knowledge should be imputed to the defendants.

First, Brian M. Maher, a parishioner and licensed arborist, testified that he never actively inspected the tree for any signs of defect.[7] Jeffrey O'Brien, a profes-

---

advance. . . . There's actual notice. . . . Or you might find that . . . there is constructive notice. . . . Constructive notice is the kind of notice that means the information you should have had if you were exercising reasonable care. . . . And a plaintiff needs to illustrate to you, to prove to a jury that the . . . defendant had actual or, at least, constructive notice in the trial of a premises liability case. So, if neither kind of notice existed or should be deemed to have existed in the mind of the defendant, then it has to be a defendant's verdict."

[7] Maher, in his video deposition, testified in relevant part:

"[Plaintiff's Attorney]: Do you recall doing work specifically on the ailan-

sional arborist, testified that an arborist should be looking for defects when pruning a tree.[8] Next, Marshall Cotta, the tree warden for the town, testified that his only observations of the tree were limited to when he used the parking lot and walked by the tree to go to a market. Finally, the experts for both parties testified that ailanthus trees are characteristically brittle and generally should not placed near roadways or parking lots for this reason.

The jury must make the threshold determination of whether these men, in their capacity as agents, had actual or constructive knowledge of a defect in the tree. If so, the jury must determine whether that knowledge

thus trees?

"[The Witness]: Yeah. Like I said before, if there was a broken branch, and every one had small broken branches one time or another, and I know I had been up in just about every ailanthus tree to flush the broken stubs and to cut deadwood while I was up there.

"Q. How often did you work on these trees?

"A. A couple of times a year. . . .

"Q. When you climbed these trees, did you notice evidence of broken branches?

"A. Yeah.

"Q. Did you notice any trunk cracks or cracks running along the trunks of these ailanthus trees?

"A. I can't say that I remember.

"Q. On this particular tree . . . do you recall any cracks in the trunk of that particular tree?

"A. I can't recall.

"Q. When you went and did work on these trees, were you looking for cracks?

"A. No, I wasn't. If I'm up in a tree and I see something I'll go after it, but I'm not putting a magnifying glass [to it]. . . . I'm really not looking that detailed around. I'm going after a limb, and it takes physical exertion to do this and that so I'm not really—Well, I would say I'm not fine-tooth combing the trees while I'm up there."

[8] O'Brien testified in relevant part:

"[Defendant Town's Attorney]: And when you climb up a tree to do that you're going to prune it, but, in the business do you also, as an arborist, would you be looking around for any other of these conditions or indications of any problems that might be apparent to you?

"[The Witness]: Absolutely."

should be imputed to the respective defendants. Because I believe that the charge was deficient and the case was not properly presented to the jury, I respectfully dissent.