TERESA M. KONDRAT ET AL. *v.* TOWN OF BROOKFIELD ET AL.

KENNETH M. CURTIN, ADMINISTRATOR (ESTATE OF ROSANNE CURTIN), ET AL. *v.* TOWN OF BROOKFIELD ET AL.
(AC 26625)

McLachlan, Harper and Peters, Js.

Argued May 26—officially released August 8, 2006

*William M. Bloss,* for the appellants (plaintiffs).

*Michael C. Deakin,* for the appellee (defendant Joseph H. Austin, Jr.).

*Opinion*

PETERS, J. In *Muratori* v. *Stiles & Reynolds Brick Co.,* 128 Conn. 674, 675, 25 A.2d 58 (1942), our Supreme Court construed General Statutes §§ 23-59[1] and 23-65 (b)[2] as vesting exclusive control in a town tree warden

---

[1] General Statutes § 23-59 provides in relevant part: "The town or borough tree warden shall have the care and control of all trees and shrubs in whole or in part within the limits of any public road or grounds and within the limits of his town or borough. . . . Such care and control shall extend to such limbs, roots or parts of trees and shrubs as extend or overhang the limits of any such public road or grounds. . . . Whenever, in the opinion of the tree warden, the public safety demands the removal or pruning of any tree or shrub under the tree warden's control, the tree warden may cause such tree or shrub to be removed or pruned at the expense of the town or borough and the selectmen or borough warden shall order paid to the person performing such work such reasonable compensation therefor as may be determined and approved in writing by the tree warden. Unless the condition of such tree or shrub constitutes an immediate public hazard, the tree warden shall, at least ten days before such removal or pruning, post thereon a suitable notice stating the tree warden's intention to remove or prune such tree or shrub. . . ."

[2] General Statutes § 23-65 (b) provides in relevant part: "Any person, firm or corporation . . . who removes, prunes, injures or defaces any shrub or ornamental or shade tree, within the limits of a public way or grounds, without the legal right or written permission of the town tree warden, the borough tree warden, the city forester, the Commissioner of Transportation, the Department of Public Utility Control or other authority having jurisdiction, shall be fined not more than the appraised value of the shrub or tree and shall be liable civilly for damages in any action brought by the property owner or the authority having jurisdiction affected thereby. . . ."

over trees located in whole or in part in public road-
ways. In view of the tree warden's exclusive control,
the court held that owners of private, adjoining land
are not liable to anyone accidentally injured by a tree
falling in the roadway. Id., 677–79. The principal issue
in this appeal is whether *Muratori* provides a defense
for a private landowner if, on the one hand, he created
the condition that caused the tree to decay and to fall,
but, on the other hand, he gave the town timely notifica-
tion of the decay before the tree fell. The trial court
held *Muratori* to be applicable because, duly notified,
the town had the opportunity to exercise control to
take the tree down prior to the accident that injured
the plaintiffs. Accordingly, it granted the landowner's
motion for summary judgment. The injured plaintiffs
have appealed. We affirm the judgment of the trial court.

The plaintiffs, Teresa M. Kondrat et al., in the first
case, and Kenneth M. Curtin et al., in the second case,
filed multicount complaints against the defendant town
of Brookfield and the defenadnt Joseph H. Austin, Jr.,
in two actions that were consolidated at trial and on
appeal. The plaintiffs sought damages for personal
injuries, emotional distress, loss of consortium and
wrongful death associated with an accident caused by
a tree that fell on a car that Teresa Kondrat was driving
on Pocono Road in Brookfield. The tree was located
in part on the town's right-of-way and in part on Austin's
property at 81 Pocono Road.

Austin filed a motion for summary judgment with
respect to the multiple counts of the complaint directed
to him.[3] His motion was premised on the applicability
of §§ 23-59 and 23-65 (b). Citing *Muratori*, he main-
tained that he was not liable to the plaintiffs because

[3] Counts twenty-six through forty-three in the Kondrat complaint and
counts twenty-one through thirty-two in the Curtin complaint were
addressed to Austin. These counts charged him with having behaved negli-
gently and having created a nuisance.

these statutes vested exclusive control of the tree in his codefendants, the town and its tree warden, Walter Loesch. In support of the motion, Austin submitted an affidavit by a surveyor attesting to the location of the tree "almost entirely within the highway line of Pocono Road . . . ."

In its memorandum of decision granting Austin's motion, the trial court stated: "The undisputed facts reveal that, in approximately 1990, Joseph H. Austin, Jr., who resided at 81 Pocono Road in Brookfield, had the branches removed from a tree that stood about eight feet from the road partly on Austin's property but largely in the town's right-of-way. About ten years later, on or about July 12, 2000, Austin called the Brookfield public works department and left a message that a tree in front of his house was beginning to split.[4] In response, Ronald Klimas, Brookfield's public works director, visited the property but did not remove the tree or call the tree warden. Tragically, on July 17, 2000, the tree fell on a minivan driven by Teresa Kondrat, injuring her, killing her friend Rosanne Curtin, and physically and emotionally injuring five children in the Kondrat and Curtin families. After the accident, the tree warden, Walter Loesch, inspected the tree. He stated that it was one of the most rotten trees he had ever seen. He added that, if he had inspected the tree before it fell, he would have ordered it cut down because it presented an immediate hazard."

The trial court granted Austin's motion for summary judgment on two grounds. First, it noted that the plaintiffs' counts against Austin might be moot because, in

---

[1] In his deposition, Austin clarified that when the tree fell, he was no longer living on the Pocono Road property but had continued to visit it regularly. During one such visit, in the week prior to the accident, he was alerted to the tree's deteriorated condition by the property's caretaker. He promptly called the director of public works in the town of Brookfield and notified him that the tree was dead and rotting.

their complaints, the plaintiffs had addressed Austin's liability in the alternative, e.g. "[i]f liability does not rest with Walter Loesch and the Town of Brookfield . . . ." Earlier in its opinion, the court had concluded that the town might be held liable to the plaintiffs.[5] Second, applying the rule stated in *Muratori*, the court concluded that the town had the requisite "exclusive control" of the tree because Austin's timely notice of the defect in the tree had given the town "a sufficient opportunity to remedy the defect, even if Austin [had] created it." The court rejected the plaintiffs' contention that the tree warden statutes were unenforceable because they unconstitutionally deprived the plaintiffs of a common-law cause of action.

In their appeal, the plaintiffs have raised three issues. They contend that (1) their appeal is not moot, principally because their pleadings should not be construed to preclude consideration of whether Austin and the town can both be held accountable for the damages attributable to the accident, (2) *Muratori* does not, as a matter of law, bar a claim for intentional damage to a tree that later causes personal injury and (3) *Muratori* should be overruled because its holding (a) unconstitutionally deprives the plaintiffs of a common-law cause of action, (b) is inconsistent with the law governing the maintenance of public sidewalks and (c) is bad public policy because it discourages landowners from taking reasonable measures to prevent harm to the public. We agree with the plaintiffs' first contention but not with the other two. Accordingly, we affirm the judgment in favor of Austin.

---

[5] The trial court denied the town's motion for summary judgment on the ground that the town might be liable for the failure of the town's public works director to perform his ministerial duty to inform the town tree warden of Austin's timely message about the dangerous condition of the tree that fell and injured the plaintiffs. It also held, however, that the town had no liability to the plaintiffs either under General Statutes §§ 52-557n (b) (8) or 13a-149.

I

## MOOTNESS

The trial court opined that the plaintiffs' claims might become moot if they were able to hold the town liable for their losses. As the court observed, the plaintiffs' pleadings addressed to Austin purported to hold him liable if " 'liability does not rest with [the tree warden] and the Town of Brookfield.' "[6] The court denied the town's motion for summary judgment on the ground that it might be liable to the plaintiffs because of the failure of the town's public works director to notify the tree warden about information that he had received from Austin about the decayed condition of the tree that fell and injured the plaintiffs. In this court, the plaintiffs have acknowledged that they have reached a monetary settlement with the town.[7] We must therefore decide whether their claims against Austin have become moot. We hold that they have not.

It is undisputable that, because mootness implicates subject matter jurisdiction, it is a threshold matter for an appellate court to resolve. *Private Healthcare Systems, Inc.* v. *Torres*, 278 Conn. 291, 298, 898 A.2d 768 (2006). "When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." *Giaimo* v. *New Haven*, 257 Conn. 481, 493, 778 A.2d 33 (2001).

The plaintiffs argue that their appeal is not moot for three reasons, one procedural, one strategic and one

[6] We need not decide whether there would have been any basis for holding the town liable if the tree had been located wholly on Austin's property.

[7] The plaintiffs so acknowledged at oral argument in this court.

substantive. We are not persuaded by the first two, but we conclude that the last has merit.

Procedurally, the plaintiffs argue that their claims are not moot because Austin did not raise this issue in the trial court. This argument warrants little discussion. It was the plaintiffs who chose to frame their pleadings in the alternative. It was not Austin's responsibility to rewrite them. Moreover, when the trial court raised the issue of the alternative pleadings, the plaintiffs had an opportunity to move to amend.[8] More fundamentally, however, because mootness is jurisdictional, it is an issue that can be raised at any time regardless of whether it was preserved at trial. *Gagnon* v. *Planning Commission*, 222 Conn. 294, 297, 608 A.2d 1181 (1992).

Strategically, the plaintiffs argue that their claims are not moot because they withdrew their claims against the town before they could be finally adjudicated in a court of law. This argument elevates form over substance. The plaintiffs have offered no reason why, for mootness purposes, there is a distinction between a final settlement and a final adjudication. In either case, to quote their own pleadings, "liability [has come to rest] with . . . the Town of Brookfield . . . ."

We, nonetheless, are persuaded that we have jurisdiction to address the plaintiffs' claims against Austin because, practically speaking, we cannot separate their potential mootness from their substantive merits. If, as the plaintiffs argue, the town and Austin could both be held liable under the circumstances of this case, or under recent case law that arguably weakens *Muratori*'s authority as a binding precedent, then this court could grant the plaintiffs "practical relief." In the absence of a claim by Austin that the plaintiffs' inartful

---

[8] Indeed, at oral argument in the trial court, the plaintiffs acknowledged that their claims should not have been alleged in the alternative and indicated that they would file a motion to amend their pleadings.

pleadings misled him so as to impair his ability to defend himself, we conclude that the plaintiffs' claims are not moot.

## II

## DOES *MURATORI* GOVERN THIS CASE?

The plaintiffs argued in the trial court, as they argue on appeal, that *Muratori* v. *Stiles & Reynolds Brick Co.*, supra, 128 Conn. 674, does not protect Austin from liability in this case. This argument also has several parts. First, the plaintiffs maintain that *Muratori* is distinguishable because, unlike the defendant in that case, Austin created a nuisance that caused the decay in the tree that fell in the roadway. Second, they maintain that *Muratori* has, in effect, been overruled by *McDermott* v. *Calvary Baptist Church*, 68 Conn. App. 284, 791 A.2d 602 (2002), aff'd, 263 Conn. 378, 819 A.2d 795 (2003). We are not persuaded by either argument.

The trial court considered and rejected the plaintiffs' claim that the nuisance counts in their complaints[9] distinguish these cases from the nuisance claim adjudicated in *Muratori*. The court observed that "[t]he plaintiffs themselves emphasize that Austin gave the town adequate notice of the defective tree in front of Austin's house. Under these circumstances, the town had a sufficient opportunity to remedy the defect, even if Austin created it. Thus, there is no reason not to follow *Muratori*'s clear command that the town has 'exclusive control' of, and its holding that towns have

[9] Counts thirty-five through forty-three of the Kondrat complaint and counts twenty-seven through thirty-two of the Curtin complaint charged Austin with having created a nuisance because "the tree that was on [Austin's] property and which abutted Pocono Road constituted a condition that had a natural tendency to create danger and inflict injury upon persons or property because the tree was rotten and decayed and had been for some period of time before the accident." Apparently, these counts were drafted before the plaintiffs learned, from Austin's deposition, that, in 1990, he had had the branches of the fallen tree removed.

exclusive responsibility for, trees at least partly touching on a public highway."

Renewing their argument in this court, the plaintiffs maintain that, unlike the landowner in *Muratori*, Austin should be held liable because he intentionally created a nuisance by cutting off the branches of the tree ten years before the occurrence of the accident that caused the plaintiffs' injuries. For present purposes, there is no distinction between a claim of negligence and one of nuisance because *Muratori* expressly held that the owner of adjoining land had no liability under either theory. See *Muratori* v. *Stiles & Reynolds Brick Co.*, supra, 128 Conn. 677–79. In *Muratori*, however, the plaintiffs claimed only that the landowner had permitted tree branches to overhang the roadway at "six feet four inches above the macadam." Id., 676. In this case, by contrast, in the plaintiffs' affidavits in opposition to the motion for summary judgment, they alleged that Austin had killed the tree that fell.[10]

It may be that our Supreme Court will want to limit *Muratori* to its facts, but we are not persuaded that this court should do so. The gist of the plaintiffs' argument is that Austin had a duty to abate the nuisance that he had created at some point in time prior to his notification of the town in this case. The plaintiffs undoubtedly are right that Austin's conduct in cutting off the branches violated the tree warden statutes, and this conduct presumably would have subjected him to liability to pay a fine. See General Statutes § 23-65 (b). The record nonetheless does not support an assumption that the tree immediately threatened the life and limb of those who traveled in the roadway. Ten years is a long time.

---

[10] In his deposition, Austin had stated that he had owned the Pocono Road property for approximately forty years. He had arranged for removal of the tree's branches, approximately ten years before the tree fell, to prevent its leaves from falling near the house. He admitted that he had expected the remaining trunk to die at some future time.

From the point of view of civil liability, Austin's responsibility for denuding the tree is difficult to distinguish from what his liability would have been if the tree had been hit by lightning so severe as to leave remaining limbs at risk of falling. The problem with the plaintiffs' argument, as the trial court aptly noted, is that Austin's notification of the town, albeit later than might have been prudent, was in fact still timely. The plaintiffs have not challenged the accuracy of the court's factual determination that there is no genuine issue of material fact that the town received notice that the tree was dangerously defective at a time when the tree warden, exercising his statutory authority, could have had the tree taken down and averted the accident in which the plaintiffs were injured.

Alternatively, the plaintiffs urge us to hold that *Muratori* does not govern this case because, in *McDermott* v. *Calvary Baptist Church*, supra, 68 Conn. App. 287–90, this court found no fault with jury instructions that a landowner and a town could both be held liable for injuries caused by a falling tree branch. Our Supreme Court affirmed our judgment. *McDermott* v. *Calvary Baptist Church*, 263 Conn. 378, 819 A.2d 795 (2003). It follows, according to the plaintiffs, that a determination that the town is liable to them does not absolve Austin of liability.

We are not persuaded that *McDermott* can properly be given the weight that the plaintiffs assign to it. Neither the opinion in this court, nor that in the Supreme Court alludes to *Muratori*.[11] Both appeals were filed by the injured plaintiff in response to the jury verdict in favor of the landowner and the town. In the absence of a finding of *any* liability, for either defendant, neither court had the opportunity to consider the possibility of *dual* liability.

---

[11] To the best of our knowledge, *Muratori* was not cited to either court.

We conclude, therefore, that the trial court properly held that *Muratori* governs the liability of the parties in this case. The fact that *Muratori* was decided many years ago does not mean that it has become obsolete.[12] It is significant that the legislature, having revised §§ 23-59 and 23-65 (b) in other respects, has not amended the language on which *Muratori* relied. Although "legislative inaction is not necessarily legislative affirmation . . . we . . . presume that the legislature is aware of [the Supreme Court's] interpretation of a statute, and that its subsequent nonaction may be understood as a validation of that interpretation. . . . Time and again, we have characterized the failure of the legislature to take corrective action as manifesting the legislature's acquiescence in our construction of a statute." (Internal quotation marks omitted.) *Hammond* v. *Commissioner of Correction*, 259 Conn. 855, 874, 792 A.2d 774 (2002).

## III

The plaintiffs' final arguments, in effect, ask us to overrule *Muratori* with respect to the liability of someone in Austin's position. According to the plaintiffs, if *Muratori* absolves Austin of liability, enforcement of the tree warden statutes under the circumstances of this case (1) makes the statutes unconstitutional, (2) is

[12] Indeed, although *Muratori* has not been cited again by our Supreme Court, it has routinely been followed in cases heard in the Superior Court. See, e.g., *Heck* v. *Amica Mutual Ins. Co.*, Superior Court, judicial district of Fairfield, Docket No. CV05-4005017S (October 26, 2005) (40 Conn. L. Rptr. 188); *Herrera* v. *Bridgeport*, Superior Court, judicial district of Fairfield, Docket No. CV01-0387059S (July 30, 2004) (37 Conn. L. Rptr. 568); *Watson* v. *Alpert*, Superior Court, judicial district of New Haven, Docket No. CV99-432749S (September 26, 2002) (33 Conn. L. Rptr. 171); *Williamson* v. *Cheshire Academy*, Superior Court, judicial district of New Haven, Docket No. CV98-0409098S (October 25, 2001); *Bernard* v. *Freitas*, Superior Court, judicial district of Danbury, Docket No. CV97-0328642S (November 29, 2000) (29 Conn. L. Rptr. 51); *Nutmeg Paper Boxes, Inc.* v. *Johnson*, 17 Conn. Sup. 107 (1950).

inconsistent with the law governing defective sidewalks and (3) is poor public policy. We disagree.[13]

The plaintiffs' argument of unconstitutionality is premised on the alleged applicability to this case of the principle articulated in *Gentile* v. *Altermatt*, 169 Conn. 267, 287, 363 A.2d 1 (1975), appeal dismissed, 423 U.S. 1041, 96 S. Ct. 763, 46 L. Ed. 2d 631 (1976). *Gentile* held that article first, § 10, of our state constitution deprives the legislature of the authority to abolish a legal right existing at common law prior to 1818 unless the legislature simultaneously establishes a reasonable alternative to the enforcement of that right. Id., 286; *Binette* v. *Sabo*, 244 Conn. 23, 30, 710 A.2d 688 (1998). For present purposes, we may assume that, in the absence of the tree warden statutes, the plaintiffs would have had a common-law tort action against Austin. See *Hewison* v. *New Haven*, 37 Conn. 475, 483 (1871).

In its *Gentile* analysis, the trial court properly focused on the plaintiffs' constitutional claim under the circumstances of this case. As *Gentile* itself held, "[a] plaintiff, in challenging the constitutionality of a statute, must sustain the burden of proving that the effect or impact of the challenged statute on him adversely affects a constitutionally protected right which he has. This means a right which he proves that he has under the facts of his particular case and not merely under some possible or hypothetical set of facts not proven to exist." (Internal quotation marks omitted.) *Gentile* v. *Altermatt*, supra, 169 Conn. 307; see also *City Recycling, Inc.* v. *State*, 247 Conn. 751, 758, 725 A.2d 937 (1999).

---

[13] We recognize, as do the plaintiffs, that, with respect to these arguments, this court is no more than a way station on the road to our Supreme Court. "It is axiomatic that the trial court and this court are without authority to overrule the decisions of our Supreme Court." *West Hartford* v. *Murtha Cullina, LLP*, 85 Conn. App. 15, 24, 857 A.2d 354, cert. denied, 272 Conn. 907, 863 A.2d 700 (2004). The plaintiffs properly raise these issues here to obviate a later claim of waiver.

The trial court's resolution of the plaintiffs' *Gentile* claim therefore required the court to decide whether the plaintiffs had been afforded a reasonable alternative to their common-law tort claim against Austin by virtue of their right to recover damages from the town. Citing the opinion of Judge Taggart D. Adams in *Bernard* v. *Freitas*, Superior Court, judicial district of Danbury, Docket No. CV97-0328642S (November 29, 2000) (29 Conn. L. Rptr. 51), the court held that *Gentile* had been satisfied by the availability of monetary relief from the town.[14]

The plaintiffs do not deny that *Gentile* requires recourse to an "as applied" constitutional analysis but decry the adequacy of their remedy against the town on the ground that it "is subject to possible trial and appellate review . . . ." This argument borders on the frivolous. As a matter of principle, the plaintiffs fail to cite any authority for the proposition that *Gentile* requires a legislative remedy to be so self-executing that its adequacy in any particular case cannot be reviewed on appeal. As a matter of fact, the plaintiffs fail to explain how they can challenge the adequacy of a remedy that resulted in a voluntary settlement of their claims.[15] Under the circumstances of this case, we agree, therefore, with Austin that the plaintiffs do not have a persuasive *Gentile* claim.

The plaintiffs next argue that the law governing defective trees on town roads should be modified for consistency with the law governing defective sidewalks. In a

---

[14] The opinion of the court did not explore whether the amount of damages attributable to a failure to perform the ministerial duty of passing on notice to a tree warden would be the functional equivalent of damages that might be awarded as a remedy for negligence and nuisance. The plaintiffs did not, however, ask for an articulation on this ground.

[15] For a more general discussion of the sufficiency of statutory remedies against municipalities in cases involving defective trees, see *Bernard* v. *Freitas*, supra, 29 Conn. L. Rptr. 51.

manner similar to the text of the tree warden statutes, General Statutes § 13a-149 gives towns control over sidewalks. The plaintiffs note, nonetheless, that a number of cases and scholarly authorities have taken the position that the owner of land adjacent to a town road may be held liable for injuries attributable to a dangerous condition on a sidewalk that the landowner himself has created. See, e.g., *Perkins* v. *Weibel*, 132 Conn. 50, 52, 42 A.2d 360 (1945); *Stevens* v. *Neligon*, 116 Conn. 307, 309–10, 313, 164 A. 661 (1933); *Calway* v. *William Shaal & Son, Inc.*, 113 Conn. 586, 590, 155 A. 813 (1931); *Hanlon* v. *Waterbury*, 108 Conn. 197, 200, 142 A. 681 (1928); *Abramczyk* v. *Abbey*, 64 Conn. App. 442, 446, 780 A.2d 957, cert. denied, 258 Conn. 933, 785 A.2d 229 (2001); 2 N. Landau & E. Martin, Premises Liability Law and Practice (2004) § 8.06, p. 8-56; 2 Restatement (Second), Torts § 368, p. 268 (1965).

To prevail on this argument, however, the plaintiffs need to address an important distinction between the tree warden statutes and the sidewalk statute. As Austin notes, the tree warden statutes deprive the private landowner of the authority to trim or to take down a tree that is wholly or in part situated in a public roadway. The defective sidewalk statute does not contain any such constraint. In the sidewalk cases on which the plaintiffs rely, there were, therefore, no articulated statutory impediments to the private landowners' remediation of the dangerous conditions that they had created.

In light of this salient difference in the governing statutes, the plaintiffs' argument for reinterpretation of the tree warden statutes is unpersuasive. Until the legislature revisits the disparate assumptions on which the two statutes apparently are based, we must respect the disparate choices embodied therein.

The plaintiffs' final argument for revisiting *Muratori* founders on similar separation of powers grounds. In

the plaintiffs' view, the legislature made a flawed decision of public policy when it decided to enact statutes imposing sole responsibility for defective trees in public roadways on hard-pressed municipal governments. The plaintiffs may well be right. As this court has observed on other occasions, perhaps the legislature should rethink this policy. It is not in our province to do so.

The judgment is affirmed.

In this opinion the other judges concurred.