# KATHLEEN IPACS *v.* DAVID CRANFORD ET AL.
## (AC 20370)

Schaller, Spear and Hennessy, Js.

Argued April 3—officially released September 4, 2001

*Daniel Owen Dietchweiler*, with whom, on the brief, was *Steven Jay Monn*, for the appellants (defendants).

*Kathryn Calibey*, with whom was *John J. Houlihan, Jr.*, for the appellee (plaintiff).

*Opinion*

SPEAR, J. In this personal injury action, the defendants, David Cranford and the Salvation Army,[1] appeal from the judgment, rendered after a jury trial, in favor of the plaintiff, Kathleen Ipacs. The defendants claim that the trial court improperly (1) denied their posttrial motion challenging the verdict as against the weight of the evidence, and (2) failed to instruct the jury on the plaintiff's duties and responsibilities as an operator of a bicycle on a public highway. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On August 19, 1996, the plaintiff was riding her bicycle in a northerly direction in the southbound lane of North Quaker Lane in West Hartford. At the intersection of North Quaker Lane and Asylum Avenue, the plaintiff made a left hand turn from the center of North Quaker Lane onto Asylum Avenue. After making the turn, the plaintiff traveled west against traffic in the right hand lane on Asylum Avenue. Although the plaintiff saw Cranford's minivan in the right lane on Asylum Avenue, she did not believe that she was in danger. The defendant, who was traveling at a high rate of speed, struck the plaintiff and caused her to suffer multiple injuries. The jury returned a verdict for the plaintiff and awarded $769,000 in economic damages and $540,000 in noneconomic damages for a total damages award of $1,309,000.[2]

---

[1] Cranford was operating a minivan owned by the Salvation Army.

[2] The jury found that the plaintiff was 15 percent negligent and the defendant 85 percent negligent.

After the verdict, the defendants filed a motion in arrest of judgment, to set aside the verdict, for judgment notwithstanding the verdict, for a remittitur, for a new trial and for a reduction in the verdict due to collateral source payments. Thereafter, the court granted the defendants' motion for a remittitur in the amount of $649,040.31, finding that the economic damages portion of the verdict was excessive. The court also deducted collateral source payments in an amount that the parties agreed on and thereafter rendered judgment for the plaintiff in the amount of $449,567.39. The defendants' other motions directed to the verdict[3] were denied, and this appeal followed.

I

We first address the defendants' claim that the verdict was against the weight of the evidence. In their principal brief, the defendants claim that the verdict is so unwarranted that it "shocks the sense of justice, compelling the conclusion that the jury was influenced by mistake." We disagree.

In reviewing a court's refusal to set aside a verdict, we apply an abuse of discretion standard. *Opotzner* v. *Bass*, 63 Conn. App. 555, 569, 777 A.2d 718, cert. denied, 257 Conn. 910, 782 A.2d 134 (2001). The evidence is viewed in a light most favorable to the prevailing party and to sustaining the verdict. Id. We accord great weight to the court's decision and indulge every reasonable presumption in favor of its correctness. *Gombos* v. *Aranoff*, 53 Conn. App. 347, 350–51, 730 A.2d 98 (1999). We must determine whether the jury reasonably could have concluded, on the basis of the evidence and reasonable inferences drawn from that evidence, that the verdict in favor of the plaintiff was proper. *Purzycki* v. *Fairfield*, 244 Conn. 101, 106–107, 708 A.2d 937 (1998).

---

[3] All of those motions challenged the verdict on the same grounds.

"A court is empowered to set aside a jury verdict when, in the court's opinion, the verdict is contrary to the law or unsupported by the evidence. . . . A verdict should not be set aside, however, where it is apparent that there was some evidence on which the jury might reasonably have reached its conclusion." (Citation omitted; internal quotation marks omitted.) *PAR Painting, Inc.* v. *Greenhorne & O'Mara, Inc.*, 61 Conn. App. 317, 322, 763 A.2d 1078, cert. denied, 255 Conn. 951, 770 A.2d 31 (2001).

The defendants assert that the verdict was improper for two reasons. First, they claim that the plaintiff's violation of several statutes constituted negligence per se, making her negligent conduct more than 50 percent responsible for causing the accident.[4] Second, the defendants argue that the verdict must have been based on a mistake because the jury originally failed to award economic damages, mistakenly believing that the court would make the award, and then awarded $769,000 in economic damages, when the actual, maximum economic damages was $119,959.69.

We conclude that there was sufficient evidence to support the verdict and, thus, it does not shock the sense of justice. The jury heard testimony that Cranford's vehicle was traveling at a high rate of speed close to the curb, that he saw the plaintiff turn onto Asylum Avenue into his travel lane and that he had sufficient time to avoid the accident. There was expert testimony to the effect that if the plaintiff were believed, she was

---

[4] In their brief, the defendants claim that the plaintiff committed the following violations of law: "(1) passed on the left side of a vehicle in front of her stopped at an intersection in violation of General Statutes § 14-232; (2) proceeded in the lane of opposing traffic on North Quaker Lane in violation of General Statutes § 14-230; (3) failed to stop at the intersection in violation of General Statutes § 14-301; (4) turned left at the intersection without proper indication in violation of General Statutes § 14-244; and (5) proceeded onto Asylum Avenue in the lane of opposing traffic in violation of General Statutes § 14-230."

traveling slowly, and Cranford had sufficient time to stop if he had reacted and applied his brakes. It is the jury's function, not ours, to pass on the credibility of witnesses and the weight to be given to the evidence. *Tryon* v. *North Branford*, 58 Conn. App. 702, 716, 755 A.2d 317 (2000). The jury had sufficient evidence before it to have concluded that Cranford's negligence was 85 percent responsible for the accident and resulting injuries.

The defendants next argue that the excessive award of economic damages shows that the jury was confused and mistaken, and, therefore, the entire verdict is tainted. We are unpersuaded.

The defendants cite no authority in support of their claim that because a remittitur was ordered, the verdict necessarily was tainted and should be set aside. Adoption of that proposition would effectively eliminate the procedural mechanism of a remittitur because whenever a court deemed a verdict excessive, it would have to set aside the verdict rather than order a remittitur. Such a procedure would be contrary to General Statutes § 52-228b, which precludes a court from setting aside a verdict as excessive without giving the prevailing party an opportunity to accept a remittitur.[5] That argument is without merit.

## II

The defendants next claim that the court committed plain error by failing to instruct the jury pursuant to statute that the plaintiff, when riding a bicycle on the public highway, had the same duties and responsibilities as the operator of a motor vehicle. Specifically, the

[5] General Statutes § 52-228b provides in relevant part: "No verdict in any civil action involving a claim for money damages may be set aside . . . solely on the ground that the damages are excessive unless the prevailing party has been given an opportunity to have the amount of the judgment decreased by so much thereof as the court deems excessive. . . ."

defendants claim that the court should have instructed the jury, pursuant to General Statutes § 14-286a (a), that "[e]very person riding a bicycle . . . upon the traveled portion of a highway shall . . . be subject to all of the duties applicable to the driver of any vehicle . . . ." We disagree.

The defendants request plain error review of their claim. Pursuant to Practice Book § 60-5, "[t]he [appellate] court may reverse or modify the decision of the trial court if it determines . . . that the decision is otherwise erroneous in law. The court shall not be bound to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial. The court may in the interests of justice notice plain error not brought to the attention of the trial court. . . ." "Plain error is restricted to extraordinary situations where the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." *Herrera* v. *Madrak*, 58 Conn. App. 320, 325, 752 A.2d 1161 (2000).

"A charge that demonstrates that the trial court has overlooked the applicable statute justifies consideration as plain error. . . . We will consider, under [Practice Book § 60-5], a claim that the defendant was prejudiced by the trial court's failure to instruct the jury on a statute he contends is mandatory. The defendant cannot prevail under [Practice Book § 60-5], however, unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Citations omitted; internal quotation marks omitted.) *State* v. *Day*, 233 Conn. 813, 849, 661 A.2d 539 (1995). We now must examine the entire charge to determine whether the defendants have carried their burden.

"[J]ury instructions must be read as a whole and . . . are not to be judged in artificial isolation from the

overall charge. . . . The whole charge must be considered from the standpoint of its effect on the jurors in guiding them to a proper verdict . . . and not critically dissected in a microscopic search for possible error. . . . The instruction must be adapted to the issues and may not mislead the jury but should reasonably guide it in reaching a verdict. . . . We must review the charge as a whole to determine whether it was correct in law and sufficiently guided the jury on the issues presented at trial. . . .

"Our standard of review on this [nonconstitutional] claim is whether it is reasonably probable that the jury was misled. . . . The test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . Therefore, jury instructions need not be exhaustive, perfect, or technically accurate. Nonetheless, the trial court must correctly adapt the law to the case in question and must provide the jury with sufficient guidance in reaching a correct verdict." (Internal quotation marks omitted.) *Marshall* v. *O'Keefe*, 55 Conn. App. 801, 804–805, 740 A.2d 909 (1999), cert. denied, 252 Conn. 918, 744 A.2d 438 (2000).

In its instructions, the court made clear to the jury that the plaintiff was under a duty to use reasonable care and that her conduct was to be judged "in light of all the relevant facts she perceived or should have perceived in the exercise of reasonable care." The court also charged the jury, at the defendants' request, on every statutory violation that the plaintiff allegedly had committed: Failure to signal a left hand turn in violation of General Statutes § 14-286c; failure to make her turn as close as practicable to the curb or edge of the highway on the far side of the intersection in violation of General Statutes § 14-244; failure to operate her bicycle

as near to the right side of the roadway as practicable in violation of General Statutes § 14-286b; and failure to stop at a stop sign in violation of General Statutes § 14-301 (c).[6]

We conclude that the defendants' case was fairly put before the jury with respect to their claims that the plaintiff was responsible for the accident through her own negligence in violation of applicable statutes. Because the court charged on all of the statutes that the plaintiff allegedly violated and also instructed the jury on the plaintiff's responsibility to use reasonable

---

[6] The court's jury instructions on the plaintiff's responsibilities also included the following: "The plaintiff was under a duty to [exercise] the same care to avoid suffering any injury as that what was found with the defendant, that is the care which [an] ordinary prudent person would use under the circumstances. The plaintiff's conduct is to be judged in light of all the relevant facts she perceived or should have perceived in the exercise of reasonable care.

\*\*\*

"General Statutes §§ 14-286c and 14-244 provide in part [that] each person riding a bicycle on the traveled portion of a highway and intending to make a left turn after giving a hand signal by extending the left hand and arm horizontally with forefinger pointed may approach as close as practicable to the right hand curb or edge of the highway, proceed across the intersecting roadway and make such turn as close as practicable to the curb or edge of the highway on the far side of the intersection.

"If you find the plaintiff failed in any one of these statutes, you must find that she was negligent.

"General Statutes § 14-286b (a) provides in part that 'every person operating a bicycle upon a roadway shall ride as near to the right side of the roadway as practicable . . . .'

"If you find that the plaintiff has failed to ride her bicycle as near to the right side of Asylum as practicable, then she is negligent.

"General Statutes § 14-301 (c) . . . provides in part that a driver of a bicycle 'shall stop in obedience to a stop sign at such clearly marked stop line or lines as may be established by the traffic authority having jurisdiction . . . and shall yield the right-of-way to vehicles' which are not obligated to stop or approaching so closely as to constitute an immediate hazard.'

"If you find that the plaintiff failed to stop at the stop sign or clearly marked stop line at the end of North Quaker Lane or failed to yield the right-of-way to approaching vehicles that were within the intersection or approaching so closely as to constitute an immediate hazard, then she was negligent."

care, failure to specifically instruct on § 14-286a was not "so clear and so harmful"; *State* v. *Day*, supra, 233 Conn. 849; as to constitute manifest injustice.

The judgment is affirmed.

In this opinion the other judges concurred.