[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: (1) DEFENDANTS' MOTION FOR REMITTITER (2) DEFENDANTS' MOTION TO SET ASIDE VERDICT AND FOR NEW TRIAL (3) PLAINTIFF'S MOTION FOR ADDITUR
I. HISTORY OF PROCEEDINGS
This action arises out of a failed attempt by the plaintiff to lease a dwelling from the defendants in the Fall of 1997. The parties entered into a written lease agreement pursuant to which the plaintiff, a senior citizen in her late seventies, was to rent from the defendants a carriage house, which the defendants were remodeling into a dwelling unit. The agreed rental was $1,000 per month for an initial period of two years. Occupancy was to commence October 1, 1997. In preparing for occupancy, the plaintiff paid a security deposit of $1000.00 in addition to the first month's rent, the plaintiff purchased piping for a wood stove, fuel oil and appliances. Plaintiff never took occupancy because the premises was not ready for occupancy on the date agreed to. Plaintiff, facing homelessness, found another apartment on October 23, 1997. Defendants retained the money paid and appliances furnished by the plaintiff.
By complaint dated October 2, 1998, the plaintiff sought damages for breach of the lease contract and conversion of the plaintiffs personal CT Page 6714 property. Plaintiff also sought treble damages for theft pursuant to General Statutes § 52-564. Defendants filed an answer and counterclaim dated November 10, 1998, claiming that the plaintiff breached the lease agreement and seeking money damages from the plaintiff for loss of rental and additional remodeling costs claimed to have been incurred by them in preparing the premises for another tenant. By way of her answer to the defendants' counterclaim dated May 25, 2001, the plaintiff asserted as a special defense that the defendants had failed to obtain a certificate of occupancy.
On March 28, 2002, trial commenced before a jury of six and two alternates. On the second day of trial, April 2, 2002, the court permitted the plaintiff to further amend her complaint to add an allegation, consistent with the testimony, that the defendants did not obtain a certificate of occupancy until February. 1998 and to add an allegation that the defendants failed to escrow the security deposit as required by statute.
During the four day trial, the court heard from six witnesses and received thirty-six documentary exhibits. Prior to the submission of the case to the jury, the court and the attorneys for the parties agreed on a verdict form (attached hereto as Appendix I) and nine interrogatories (attached hereto as Appendix II). The jury returned a verdict in favor of the plaintiff and awarded the plaintiff total money damages of $25,271.81 which included, under the conversion count, consequential damages in the amount of $17,330.73.
The verdict was returned by the jury, after two requests by the jury that the court repeat certain portions of its charge. In responding to the first request, the court repeated the portion of the charge explaining that a meeting of the minds was required for parties to form a binding contract. In responding to the second request, the court repeated the portion of the charge which dealt with consequential damages. The repetition of each of those instructions was done only after the court conferred with counsel and obtained their consent.
II. MOTION AND ARGUMENTS
 A. Defendants' Motions
Defendants have filed a Motion For Remittitur (#128) and a Motion to Set Aside Verdict and For New Trial (#129), each dated April 12, 2002. Defendants argue that the jury's verdict was excessive, inconsistent with the evidence and resulted from passion or partiality on the part of the jury. In their Motion For Remittitur, the defendants request that the court remit the sum of $19,063.80 from the jury's verdict and enter CT Page 6715 judgment for the plaintiff in the amount of $6,208.01. The reduction accounts for the award for consequential damages ($17,330.73) and interest thereon ($1,733.07). At oral argument the plaintiff requested a remittitur of $17,330.73 which would result in a judgment for the plaintiff in the amount of $7,941.08.
Defendants also argue in their motion to set aside the verdict and their request for a new trial that no portion of the evidence supports the award for consequential damages and that, in awarding $17,330.73 for such damages, the jury went far beyond the limits imposed by the court's instructions to the jury and the jury's own findings as evidenced by the answers to the interrogatories. This is especially true, the defendants argue, in light of the jury's finding that the defendants, in converting the plaintiffs personal property to their own use, did not commit theft
of such property. Had the jury found otherwise, they could have awarded treble damages pursuant to General Statutes § 52-564, which would have resulted in an amount substantially equal to the verdict rendered. Defendants, as an alternative to the requested remittitur, ask that the court set aside the verdict and order a new trial.
B. Plaintiff's Motions and Objection
Plaintiff has filed, in response to the defendants' motions, a Motion For Additur (#130) and an Objection to the defendants' motions (#131). Plaintiff argues that the defendants agreed and failed to object to, not once, but twice, the portion of the court's charge dealing withconsequential damages and submitted no request to charge on that issue. Plaintiff also points out that the defendants failed to object to the verdict at the time it was rendered. Plaintiff submits that, viewed in a light most favorable to sustaining the verdict and allowing for reasonable inferences, there was sufficient evidence to support it. Plaintiff correctly asserts that the plaintiff testified, without objection by the defendants, that the defendants' breach of the lease agreement caused plaintiff emotional turmoil in her fear that she would be homeless resulting in temporary paralysis of one of her arms. Plaintiff argues that this unchallenged testimony considered in light of the instruction on consequential damages supports and explains the amount of the verdict and urges this court to so find. In effect, the plaintiff is asking this court to allow an award of personal injury non-economic damages in the context of breach of contract, conversion and theft causes of action. There was no evidence offered as to any medically related expense or treatment incurred by the plaintiff. There was no testimony as to any permanent effects of the emotional trauma on plaintiffs health.
Plaintiff argues pursuant to her motion seeking an additur that the jury miscalculated the interest to which the plaintiff was entitled and CT Page 6716 urges the court to calculate the interest due on the money damages awarded ($22,974.38) from the date of the breach, October 1, 1997, to the date of the verdict, April 5, 2002, at the ten percent statutory rate. This exercise, the plaintiff claims, will result in a figure of $33,311.00. Plaintiff seeks a judgment in that amount, which would require an additur of $8,039.19.
III. ISSUES PRESENTED
A) Should the verdict rendered by the jury in the amount of $25,271.81 be sustained?
B) If not so sustained, should the court order a remittitur and, if so, by what amount?
C) If not so sustained, should the court order an additur and, if so, by what amount?
D) In the event that the court is inclined to either add or subtract amounts from the verdict, what procedure must then be followed?
IV. APPLICABLE LAW
 A. Connecticut General Statutes
The following provisions of the Connecticut General Statutes are applicable to the issues in this case:
Section 52-228a.
 In any jury case where the court orders a decrease in the amount of the judgment or an increase in the amount of the judgment, the party aggrieved by the order of remittitur or additur may appeal as in any civil action. The appeal shall be on the issue of damages only, and judgment shall enter upon the verdict of liability and damages after the issue of damages is decided. (Emphasis added.)
Section 52-228b.
 No verdict in any civil action involving a claim for money damages may be set aside except on written motion by a party to the action, stating the reasons relied upon in its support, filed and heard after notice to the adverse party according to the rules of CT Page 6717 the court. No such verdict may be set aside solely on the ground that the damages are excessive unless the prevailing party has been given an opportunity to have the amount of the judgment decreased by so much thereof as the court deems excessive. No such verdict may be set aside solely on the ground that the damages are inadequate until the parties have first been given an opportunity to accept an addition to the verdict of such amount as the court deems reasonable. (Emphasis added.)
Section 52-216a.
 An agreement with any tortfeasor not to bring legal action or a release of a tortfeasor in any cause of action shall not be read to a jury or in any other way introduced in evidence by either party at any time during the trial of the cause of action against any other joint tortfeasors, nor shall any other agreement not to sue or release of claim among any plaintiffs or defendants in the action be read or in any other way introduced to a jury. If the court at the conclusion of the trial concludes that the verdict is excessive as a matter of law, it shall order a remittitur and, upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial. If the court concludes that the verdict is inadequate as a matter of law, it shall order an additur, and upon failure of the party so ordered to add the amount ordered by the court, it shall set aside the verdict and order a new trial. This section shall not prohibit the introduction of such agreement or release in a trial to the court. (Emphasis added.)
 B. Practice Book
Section 16-35.
 Motions in arrest of judgment, whether for extrinsic causes or causes apparent on the record, motions to set aside a verdict, motions for remittitur, motions for additur, motions for new trials, unless brought by petition served on the adverse party or parties, and motions pursuant to General Statutes § 52-225a for reduction of the verdict due to collateral source CT Page 6718 payments must be filed with the clerk within ten days
after the day the verdict is accepted; provided that for good cause the judicial authority may extend this time. The clerk shall notify the trial judge of such filing. Such motions shall state the specific grounds upon which counsel relies. (Emphasis added.)
Section 16-36.
 Motions to reduce the amount of a verdict or award pursuant to General Statutes §§ 52-225a or 52-216a
shall be filed within ten days after the day the verdict or award is accepted and shall be heard by the judge who conducted the trial. In matters referred to an arbitrator under the provisions of Section 23-61, motions to reduce the amount of an award shall be filed within ten days after the decision of the arbitrator becomes a judgment of the court pursuant to subsection (a) of Section 23-66. (Emphasis added.)
 C. Case Law
An excellent analysis of the legal parameters governing a trial court's post jury verdict analysis was offered by the late Justice Hull in the case of Mather v. Griffin Hospital, 207 Conn. 125 (1988), at pages 138-139:
 Litigants have a constitutional right to have factual issues resolved by the jury. Seals v. Hickey, 186 Conn. 337, 350, 441 A.2d 604 (1982). This right embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded. Id., 351. This right is "one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fairminded men passed upon by the jury and not by the court." Camp v. Booth, 160 Conn. 10, 13, 273 A.2d 714 (1970); Seals v. Hickey, supra, 352; Zarrelli v. Barnum Festival Society, Inc., 6 Conn. App. 322, 326, 505 A.2d 25, cert. denied, 200 Conn. 801, 509 A.2d 516 (1986). The amount of a damage award is a matter peculiarly within the province of the trier of fact, in this case, the CT Page 6719 jury. Herb v. Kerr, 109 Conn. 136, 139, 459 A.2d 521
(1983); Pisel v. Stamford Hospital, 180 Conn. 314, 342, 430 A.2d 1 (1980). The size of the verdict alone does not determine whether it is excessive. "The only practical test to apply to this verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption." McKirdy v. Cascio, 142 Conn. 80, 86, 111 A.2d 555 (1955); Herb v. Kerr, supra; Kiniry v. Danbury Hospital, 183 Conn. 448, 461, 439 A.2d 408 (1981): Katsetos v. Nolan, 170 Conn. 637, 656, 368 A.2d 172 (1976). In considering a motion to set aside the verdict, the court must determine whether the evidence, viewed in the light most favorable to the prevailing party, reasonably supports the jury's verdict. Campbell v. Gould, 194 Conn. 35, 41, 478 A.2d 596 (1984). The trial court's refusal to set aside the verdict is entitled to great weight and every reasonable presumption should be indulged in favor of its correctness. Herb v. Kerr, supra; Katsetos v. Nolan, supra. This is so because "[f]rom the vantage point of the trial bench, a presiding judge can sense the atmosphere of a trial and can apprehend far better than we can, on the printed record, what factors, if any, could have improperly influenced the jury." Birgel v. Heintz, 163 Conn. 23, 26, 301 A.2d 249
(1972); Zarrelli v. Barnum Festival Society, Inc., supra, 327. (Emphasis added.); See also Ham v. Green, 248 Conn. 508, 536 (1999).
When called upon, via post verdict motions, to analyze a jury verdict, the court must determine whether the jury could have reached its result based on the evidence presented at trial and reasonable inferences which the jury could have made from that evidence. Ipacs v. Cranford,65 Conn. App. 441, 443 (2001); Purzycki v. Fairfield, 244 Conn. 101,106-107 (1998). Although a court does have the power to set aside a jury verdict if the court finds that the verdict is contrary to the law or not supported by the evidence, the court should not do so where it findssome evidence to support the verdict. PAR Painting, Inc. v. Greenhorneand O'Mara, Inc., 61 Conn. App. 317, 322, cert. denied, 255 Conn. 951
(2001).
Thus, the trial court must examine the evidential underpinnings of the CT Page 6720 verdict to determine whether the evidence furnished a reasonable basis for the jury's conclusion. The court should not, however, refuse to set aside a verdict where the manifest injustice is so plain as to indicate that some mistake was made by the jury in the application of the relevant legal principles. American National Fire Ins. Co. v. Schuss, 221 Conn. 768,774 (1992); Palomba v. Gray, 208 Conn. 21, 24 (1988). If the court, after examination of the evidence, finds that the verdict is so clearly against the weight of the evidence as to indicate a misapplication of the law to the facts in evidence or that the jurors were influenced by prejudice or partiality or that they were governed by ignorance, then the court has a duty to set aside the verdict. Vickers v. Jessup, 32 Conn. App. 360, 370
(1993); State v. Hammond, 221 Conn. 264, 268 (1992). Unless the court finds that the verdict is plainly excessive or exorbitant, it should not interfere with the jury's determination. Wood v. Bridgeport, 216 Conn. 604,611 (1990); Wochek v. Foley, 193 Conn. 582, 586 (1984). "Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty". (Emphasis added.) Gilliard v. Van-Court Property Management Services,Ltfd., 63 Conn. App. 637, 644 (2001); Gaudio v. Griffin Health ServicesCorp., 249 Conn. 523, 554 (1999). (Emphasis added.)
In considering whether to remit a portion of a jury's verdict, a remittitur should be ordered only when it is clear that the jury awarded items of damage which are "contrary to law, not supported by proof, or contrary to the court's explicit and unchallenged instructions." Tomczukv. Alvarez, 184 Conn. 182, 187-88 (1981); Brower v. Perkins, 135 Conn. 675,682 (1949). In ordering a remittitur, "a fair appraisal of compensatory damages, and not the limit of legitimate generosity, is the rule." (Emphasis added.) Allen v. Giuliano, 144 Conn. 573, 578 (1957). If the amount awarded by the jury convinces the court that the verdict isentirely disproportionate to the plaintiff's loss, it is the court's duty to modify or set aside the verdict. Lengel v. New Haven Gas and LightCo., 142 Conn. 70, 78 (1955); Buckman v. People Express, Inc.,205 Conn. 166, 174-75 (1988). It is noteworthy that in Buckman, the supreme court ordered a remittitur of $35,000 relative to a verdict of $51,595.94 based on $1,595.94 in special damages. The court opined that the verdict was "impermissibly beyond the limits of legitimate generosity." Id., 177. The supreme court set aside the judgment and ordered a new trial unless, within three weeks from the date of the court's decision, the plaintiff accepted the remittitur. Id.
IV. APPLICABLE INSTRUCTIONS
In examining the evidential underpinnings of the verdict, the court must consider the evidence in light of the governing legal principles that were explained to the jury via the court's charge. The court will, CT Page 6721 therefore, refer to portions of the charge to the jury which this court determines to be relevant to the issues presented by the post verdict motions under consideration. The court charged the jury as follows:
A. GENERAL INSTRUCTIONS
You must decide this case based only on the law that I furnish to you and on the basis of all of the law as I give it to you regardless of the order of my instructions. You must not single out any particularinstruction or give it more or less emphasis than any other, but rather must apply all of my instructions on the law that apply to the facts as you find them. You are permitted to draw from facts which you find to have been proven such reasonable inferences as seem justified in the light of your experience. While you may make inferences and rely on circumstantial evidence, you should be careful not to resort to guessworkor speculation or conjecture to determine the facts in the case.
Your duty is to decide the case based on what has been admitted intoevidence in this courtroom only, and not on any information about the issues that was not presented into evidence in this courtroom.
B. AS TO PLAINTIFF'S BREACH OF LEASE CONTRACT CLAIM
As to the plaintiffs first claim — based on breach of the lease agreement dated September 2, 1997, the plaintiff claims that she agreed to rent for a period of three years, commencing October 1, 1997, the premises owned by the defendants at 417 Sharon-Goshen Turnpike in West Cornwall consisting of a "carriage house" or "barn" which was being renovated by the defendants. Plaintiff claims she paid defendants the first month's rent of $1,000 and a security deposit of $1,000, purchased fixtures appliances, planted flowers and paid for fuel oil in reliance on the lease agreement. Plaintiff further claims that the defendants breached said lease agreement by not completing the renovations and by not providing occupancy by the date agreed upon between the parties. Plaintiff claims expenses for securing substitution housing. In addition the plaintiff seeks money damages for the loss of her rental payment andsecurity deposit, the loss of her personal property, and reimbursementfor the fuel.
Plaintiff bears the burden of proving her claims by a fair preponderance of the evidence.
C. AS TO THE PLAINTIFF'S CONVERSION CLAIM:
Plaintiff alleges in the second count of her complaint that the defendants stole the plaintiffs personal property converted said property CT Page 6722 for their own use and have refused to return said property. Plaintiff seeks compensatory money damages for said alleged conversion and treble damages (3x the amount) pursuant to statute. Specific instructions on these claims will be given to you by me in due order.
D. AS TO THE PLAINTIFF'S THEFT CLAIM:
Plaintiff also claims in her second count that the defendants stole her personal property and the money she paid for the rent and security deposit. As a result, the plaintiff is claiming treble damages as provided in General Statutes § 52-564, which provides:
Treble damages for theft. Any person who steals any property of another, or knowingly receives and conceals stolen property shall pay the owner treble his damages.
E. SYMPATHY AND PREJUDICE
It is particularly important in this case when arriving at your verdict that you must not allow yourselves to be influenced by sympathy for or prejudice against anyone. You would be violating your oath as jurors if you allowed sympathy, prejudice or improper considerations to influence your determination in this case.
F. DAMAGES
A party must prove by a preponderance of the evidence the amount of any damages to be awarded. The evidence must give you a sufficient basis toestimate the amount of damages to a reasonable certainty. Although damages may be based on reasonable and probable estimates, you may notaward damages on the basis of guess, speculation or conjecture.
In addition to direct damages, any damages you award to a party may include amounts to compensate said party for consequential damages. Consequential damages are damages that are reasonably foreseeable to one party as the natural and probable results of that party's breach. Each party claims that there are consequential damages. If you find that the plaintiffs loss was reasonably foreseeable to the defendants as the natural and probable results of the defendants' breach, then your award should include the fair and reasonable value of these as consequential damages.
If, on the other hand, you find that the defendants' loss was reasonably foreseeable to the plaintiff as the natural and probable results of the plaintiffs breach, then your award should include the fair and reasonable value of these as consequential damages. CT Page 6723
A party cannot recover more than once for the same loss, even if heprevails on two or more causes of action.
In closing argument, counsel mentioned some formulas or amounts that might figure in your verdict. I caution you that figures suggested by counsel do not constitute evidence.
If you conclude that the plaintiff is entitled to recover for theconversion of the property in question, you must decide what damages she is entitled to have awarded to her. The rule for measuring damages in a case like this is the value of the property at the time it was converted, with interest from that time to this present day at the rate of ten percent per annum. The value of the property at that time is determined by the price which would have to be paid in the open market for its replacement.
If you decide to award interest, then you must compute the amount. Your verdict forms will help you to do this. You must first determine the time period that the money was wrongfully detained. The start date would be the date that the wrongful detention commenced. The end date would be the date of the verdict. You need to determine that total number of days. Under our statutes you must divide that number of days by 360 days. You should then multiply that by 10% percent, which is our annual interest rate. You should then multiply that percentage by the total amount of damages to come up with the amount of interest.
V. ANALYSIS OF THE VERDICT
In the answers to the nine interrogatories furnished to them, the jury found that the defendants promised to give possession of the premises in a habitable condition to the plaintiff on October 1, 1997. They also found that defendants breached their promises and that the premises was not ready for occupancy as late as October 23, 1997. They, determined that the defendants' failures in this regard constituted a material breach of the lease agreement and concluded that the plaintiff was justified in obtaining alternative housing and rescinding the lease. On the breach of lease count the jury awarded the plaintiff $2,200 — $1,000 for the rent paid by the plaintiff, $1,000 for the security deposit paid by the plaintiff and $200 interest thereon.
As to the conversion count, the jury found for the plaintiff and awarded the plaintiff $23,071.81 — $3,643.65 for plaintiffs tangible personal property, $17,330.73 in consequential damages and $2,097.43 in interest. As to the theft count, the jury found for the defendants. The jury refused to find that the defendants stole the plaintiffs personal CT Page 6724 property, although they clearly found that the defendants converted said property to their own use.
The amount of the verdict aside, the verdict form completed by the jury was completely consistent with their answers to the interrogatories. The jury found that the defendants breached the lease agreement and awarded damages for that breach. The jury found that the defendants converted the plaintiffs property to their own use and awarded damages for the conversion. The jury did not find theft and, therefore, awarded no damages for theft. In not finding theft, the jury could not treble the damages previously found as General Statutes § 52-564 could not be applied.
This court has performed a thorough examination of the evidence in this case in a manner most favorable to sustaining the verdict. This court has considered the evidence and any reasonable inferences which the jury might have made from the evidence. This court has searched the record in order to discover some evidence to support the verdict which would provide a reasonable basis for the jury's conclusion. Finally, this court has examined the evidence in light of the instructions to the jury.
The jury could have reasonably awarded damages, without interest, of $5,779.86 consisting of $5,265.24 in direct pecuniary damages and $514.62 in consequential damages.
The evidence supporting direct damages consists of the following:
(1) Rent paid by the plaintiff....................$1,000.00
(2) Security deposit............................. $1,000.00
(3) Piping for the wood stove.................... $1,700.00
(4) Washer-dryer....................................$530.00
(5) Medicine cabinet.................................$46.12
(6) Dishwasher......................................$317.95
(7) Phone service....................................$45.54
(8) Chandelier......................................$265.00
(9) Sink and faucets.................................$90.09
(10) Three hundred gallons of fuel oil..............$270.54 CT Page 6725
TOTAL: $5,265.24
The evidence supporting consequential damages consists of the following:
(1) Furniture storage...............................$110.00
(2) Attorney Schuchat's invoice.....................$404.62
TOTAL: $514.62
There was testimony by the plaintiff that she planted bushes on the premises in anticipation of her occupancy thereof and that the plants were of great sentimental value to her as they were cultivated by a close relative. The plants had long since died and no monetary value was assigned to them by the plaintiff. Attorney Schuchat's services were performed on the plaintiffs behalf in an attempt to resolve the dispute shortly after it erupted. The invoice was admitted without objection by the defendants. It is noteworthy, that the court, out of the presence of the jury, refused to allow evidence of attorney's fees incurred by the plaintiffs trial counsel in conducting the lawsuit and resultant trial; the proffered evidence was objected to by the defendants. It is also noteworthy that the court refused the plaintiffs request to charge the jury on exemplary and punitive damages, ruling that the evidence did not justify such an instruction.
There is no question that the jury decided to award interest to the plaintiff. In calculating the amount, however, the jury simply multiplied the amount of the damage award (on the contract and conversion counts) by 10% resulting in an award of one year's interest only. That calculation was based on the phrase on the verdict form, "Interest at 10%" and not on the portion of the court's charge which instructed them as to the formula for calculating interest. The number of days from October 1, 1997, the date of the breach, and April 5, 2002, the date of the verdict, is 1646. When that number is divided by 360, the quotient is 4.572. That number multiplied by 10% equals .457 which when multiplied by total damages of $5,779.86 amounts to total interest of $2,642.55 as per the instructions.
Thus, a careful and searching analysis of the evidential underpinnings of the jury's verdict reveals that, at most, the jury could have awarded$8,422.41 which is comprised of direct damages of $5,265.24, consequential damages of $514.62 and interest of $2,642.55. This court cannot find from the evidence a reasonable basis for awarding any money damages in excess of $8,422.41. In light of this analysis, a verdict of $25,271.81 is plainly excessive and exorbitant and is clearly indicative CT Page 6726 of a misapplication of the law to the facts that were in evidence. The verdict, based upon the evidence viewed in a light most favorable to sustaining it, is grossly disproportionate to the plaintiffs loss.
VI. AS TO THE PLAINTIFF'S CLAIM
Plaintiff argues that the evidence does in fact support the jury's award of $17,300.73 in consequential damages. Plaintiff argues that said award is for the mental anguish and physical manifestation thereof that the plaintiff suffered as a result of facing the prospect of beinghomeless. The court obtained a transcript of that testimony which was as follows:
 Q. And what was the nature of your first communication to the Smithies?
 A. I was very rueful over the collapse of the agreement.
THE COURT: Ma'am, I'm sorry, very what?
 THE WITNESS: R-u-e, rueful. Sad about the collapse of the agreement.
THE COURT: Okay.
 THE WITNESS: And I felt they had not lived up to their part of the contract. I was absolutely homeless, having had to vacate the Brisco's (phonetic spelling) house. And they had to understand, which I believe they had not understood up to then, how very desperate I was for housing. And, umm, — and the anxiety had been mounting. I was trying to describe this in this letter, and possibly a subsequent letter. Although, subsequent letters I think were more in answer to Mrs. Smithies writing either you or Amy Schuchat. And the reason for my leaving, which I had already said on the phone when I announced to them that I had been leaving, was that this growing anxiety over the last few weeks had taken such a terrible toll, including — well, I lost the use of my arm, because I was just so stressed out. And I'm not normally subject to any kind of hysterical reaction. But I had to do something. The homeless feeling was unbelievable. Boy, do I sympathize with those people down in New York. It's unlike any other, and I hope CT Page 6727 never to experience it again.
Although the testimony quoted above was a very small portion of the plaintiffs entire testimony, it was not objected to by defendants. Defendants did not move to strike the testimony once elicited. Plaintiff argues that if this testimony was believed by the jury it could well be the basis for their award of consequential damages. Specifically, the plaintiff claims that said award was compensation to the plaintiff for the emotional turmoil she experienced and her fear of being homeless which resulted from the defendants' breach of the lease agreement. Plaintiffs argument in this regard might be somewhat persuasive were it not for the fact that the jury made the award for consequential damages under the conversion count only. The jury awarded no consequential damages to the plaintiff under the breach of lease contract count. It was the defendants breach of the lease agreement which caused the plaintiffs mental anguish and physical discomfort, not the defendants failure to return her appliances or refund her money. Assuming arguendo that the plaintiffs unobjected to and unchallenged testimony as to her fear of being homeless and the resultant effects on her mental and physical well being could form the basis for turning a breach of contract claim into a personal injury action, the foundation for such claim crumbled once the jury decided to make no award for consequential damages under the contract claim.
VII. AS TO THE DEFENDANTS' CLAIM
The court is compelled to agree with the defendants' argument that there is no evidence to support the jury's award of $17,330.73 asconsequential damages under the conversation count in light of the jury's refusal to find theft. As previously stated, this court can find no reasonable evidential basis for such an award in light of the court's instruction on damages. Defendants' request for a remittitur is appropriate under the circumstances.
VIII. ORDER OF REMITTITUR
From an analysis of the evidence, this court finds that the jury, in awarding the consequential damages to the plaintiff did so without an evidential basis and contrary to the principles of law embodied in the court's instructions. The amount awarded is entirely disproportionate to the plaintiffs loss given the evidence before the jury. It is, therefore, the duty of this court to correct the verdict as the verdict was "impermissibly beyond the limits of legitimate generosity." Buckmanv. People Express, Inc., 205 Conn. 177. The court will, therefore, order a remittitur of $16,849.40 which would result in a judgment for the plaintiff of $8,422.41. CT Page 6728
IX. FURTHER PROCEEDINGS
An order of remittitur, however, is not automatically converted to a judgment unless and until certain statutory procedures are followed. Pursuant to General Statutes § 52-228b the court may not set aside a verdict solely on the ground that the amount awarded is excessive "unless the prevailing party has been given an opportunity to have the amount of the judgment decreased by so much thereof as the court deems excessive." (Emphasis added.) General Statutes § 52-216a provides that "upon failure of the party so ordered to remit the amount ordered by the court, it shall set aside the verdict and order a new trial." (Emphasis added.) General Statutes § 52-228a further provides that a "party aggrieved by the order of remittitur . . . may appeal as in any civil action." (Emphasis added.)
In interpreting the quoted statutes, our supreme court has stated that, although either party may reject an additur, "only a plaintiff may reject a remittitur." Stern v. Allied Van Lines, Inc., 246 Conn. 170, 177
(1998). By affording the prevailing party an opportunity to accept an amount which the court has found not to be excessive, General Statutes § 52-228b ensures that the party who would be adversely affected by the court's ruling receives fair treatment. Santoietro v. New Haven,239 Conn. 207, 218 (1996).
An order of remittitur thus presents the plaintiff with alternatives:
 "The plaintiff is not compelled to remit the sum suggested by the trial court, but may elect either to submit to a new trial, or to seek, by an appeal to this court . . . to have the order of new trial reversed and judgment rendered for the full amount of the verdict." (Emphasis added; internal quotation marks omitted.) Civiello v. Owens-Corning Fiberglass Corp., 208 Conn. 82, 85-86 (1988); Doroszka v. Lavine, 111 Conn. 575, 579 (1930);
X. PROCEDURAL ORDERS
Pursuant to the statutory procedure described herein, the court will ORDER as follows:
(1) On or before twenty (20) days from the date of the filing of this Memorandum, the plaintiff is to notify the court via an appropriate motion of her acceptance or rejection of the remittitur of $16,849.40. CT Page 6729
(2) If the plaintiff accepts said remittitur, the court will enter judgment for the plaintiff in the amount of $8,422.41 as of April 5, 2002.
(3) If the plaintiff rejects said remittitur, the court will set aside the verdict and order a new trial, as required by General Statutes §52-216a.
(4) Plaintiff may, as an alternative, appeal the order of Remittitur as provided in General Statutes § 52-228a.
In accordance with the foregoing, the defendants' Motion For Remittitur is granted; defendants' Motion To Set Aside The Verdict and For New Trial is denied. Plaintiffs Motion For Additur is denied.
 ___________________ Wilson J. Trombley, Judge
 APPENDIX I
[EDITORS' NOTE: APPENDIX I IS ELECTRONICALLY NON-TRANSFERRABLE.]
 APPENDIX II
[EDITORS' NOTE: APPENDIX II IS ELECTRONICALLY NON-TRANSFERRABLE.]