[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO SET ASIDE VERDICT MOTION FOR ADDITUR
Before the court is a motion to set aside the verdict and a motion for additur. Ralph Rizzitelli was driving a vehicle that was struck by the defendant, Antoinette Caggianello. The defendant admitted liability but contested the amount of damages.
On September 15, 1999, the court, Rush, J., granted a motion to substitute the estate of Ralph Rizzitelli (the estate) for Rizzitelli himself and his daughter Doreen Axelrod was the executrix. On September 12, 2000, the court, Skolnick, J., granted a motion to substitute Brad Axelrod as the plaintiff because he was now the administrator of the Rizzitelli estate due to Doreen Axelrod's death.
Prior to the introduction of evidence and by agreement of the parties, the Court advised the jury that: "the plaintiff in this case, Ralph Rizzitelli, is now deceased" and that "this accident had nothing to do with his death." The jury was also advised that "the defendant has admitted liability or fault for the accident" and that this trial was a hearing in damages only".
The evidence at trial reveals that the defendant was attempting to make a left turn onto a street but had failed to look both ways before entering the street. The defendant struck Rizzitelli's car, causing minor damage. At trial, Axelrod testified that his father-in-law had suffered neck and back injuries in the accident. He also testified on cross-examination that the plaintiff had passed away at age 76 from respiratory or heart failure and renal or kidney failure.
A trial before a jury was held on May 28, 2002. On May 29, 2002, the jury awarded the estate $1200 but awarded no non-economic damages.
On June 4, 2002, the estate filed a motion to set aside the verdict and CT Page 11929 for additur. The defendant filed her objection on June 11, 2002.
The standards for a motion for additur are identical to the standards for a motion to set aside the verdict. Hunte v. Amica Mutual Ins. Co.,68 Conn. App. 534, 541, 792 A.2d 132 (2002). "A court is empowered to set aside a jury verdict when, in the court's opinion, the verdict is contrary to the law or unsupported by the evidence. . . . A verdict should not be set aside, however, where it is apparent that there was some evidence on which the jury might reasonably have reached its conclusion." (Internal quotation marks omitted.) Marchell v. Whelchel,66 Conn. App. 574, 582, 785 A.2d 253 (2001). Moreover, "[t]he evidence is viewed in a light most favorable to the prevailing party and to sustaining the verdict"; Ipacs v. Cranford, 65 Conn. App. 441, 443,783 A.2d 1044 (2001); and "[t]he verdict should be disturbed only by considerations of the most persuasive character, as where the verdict shocks the sense of justice. . . . Only under the most compelling evidence may the court set aside a jury verdict because to do so interferes with a litigant's constitutional right in appropriate cases to have issues of fact decided by a jury." (Internal quotation marks omitted.) Hunte v. Amica Mutual Ins. Co., supra, 541.
Defendant's counsel vigorously disputed the nature and extent of the plaintiff's injuries. He pointed out that prior to this accident the plaintiff was not enjoying good health. He was 74 yeas old and had long suffered from respiratory, heart, circulatory, lung and kidney problems. He was on dialysis for many years prior to this incident.
The eighty year old defendant was gracious. She testified the accident was her fault, that her front bumper came into contact with the plaintiff's left door while she was traveling at "no more than five miles per hour" causing some bruising and scratching to her car and a dent to the plaintiff's door.
When asked to describe the impact she responded "it didn't even feel as though it was an impact, truly. It was an impact but I wasn't jolted or anything." When asked how the plaintiff appeared post accident she replied that "he certainly didn't seem hurt but he was irritated and as I said, I didn't blame him at all."
The defendant was asked if the plaintiff was bleeding at all and answered "No" and did he have any bruises at all and she answered "none whatsoever". She stated that both cars were operational.
When asked if the plaintiff complained of any injury at that time she answered "not at all". "Was the need for an ambulance ever brought up?" CT Page 11930 She answered "No, no." "What about a tow truck?" "Not at all." The police were not called to the scene and she concluded that "both vehicles were operational and each party drove their vehicle away".
The estate attacks the verdict on two grounds. First, it claims that the jury's award of economic damages goes against the weight of the evidence because Rizzitelli suffered more injuries than the jury awarded him. Second, the estate contends that the partial award of economic damages and no award of non-economic damages constitutes an inconsistent verdict.
The estate claims that the jury could not award less than the $2290 it claimed as medical damages at trial because there was no contradictory evidence that this bill was unreasonable. "Assessment of damages is peculiarly within the province of the jury and their determination should be set aside only when the verdict is plainly excessive and exorbitant. . . . Proper compensation for personal injuries cannot be computed by mathematical formula, and the law furnishes no precise rule for their assessment. . . . The only practical test to apply to a verdict is whether the award of damages falls somewhere within the necessarily uncertain limits of fair and reasonable compensation in the particular case, or whether the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption." (Citations omitted.)Wochek v. Foley, 193 Conn. 582, 586,477 A.2d 1015 (1984).
The verdict in this case does not shock the sense of justice and is within the realm of a fair and reasonable verdict. While the defendant did not present direct evidence that the medical bill was unreasonable, she did argue at trial that Rizzitelli did not suffer serious injury. At trial, Axelrod testified that his father-in-law had not immediately sought treatment for any injury. Moreover, the defendant testified that she talked to Rizzitelli on the telephone two times after the accident and he had not discussed payment for treatment or that he was physically injured. Accordingly, the jury could have found that Rizzitelli's treatment was unreasonable to a certain extent.
The estate also contends that the award of no money for non-economic damages makes the verdict inconsistent, and, therefore, legally insufficient. Until recently, an award of economic damages without an award of non-economic damages would be inadequate as a matter of law, as first promulgated in Johnson v. Franklin, 112 Conn. 228, 152 A. 64
(1930). Recently, however, our Supreme Court has found a per se rule to be unacceptable and has instead adopted a case-by-case rule. Wichers v.CT Page 11931Hatch, 252 Conn. 174, 188, 745 A.2d 789 (2000).
At trial, defense counsel argued to the jury that the damages were exaggerated and that the accident was minor. He also argued that Rizzitelli would have felt more pain and suffering from his dialysis and other medical conditions rather than from this minor traffic accident. Accordingly, the court finds that the jury could have reasonably found that Rizzitelli did not suffer compensable non-economic damages.
 "The trial judge has a broad legal discretion and his action will not be disturbed unless there is a clear abuse. . . . A mere doubt of the adequacy of the verdict is an insufficient basis for such action. . . . A conclusion that the jury exercised merely poor judgment is likewise insufficient. . . . The ultimate test which must be applied to the verdict by the trial court is whether the jury's award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury were influenced by partiality, prejudice, mistake or corruption."
 "The most notable limitation on the trial court's authority to act pursuant to § 52-216a derives from a litigant's constitutional right to have issues of fact determined by a jury. The right to a jury trial is fundamental in our judicial system, and this court has said that the right is one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded men passed upon by the jury and not by the court." Wichers v. Hatch, 252 Conn. 174, 187-88, 745 A.2d 789 (2000).
For the reasons herein stated, the court denies the motions to set aside the jury verdict and to grant additur.
BALLEN, J.T.R. CT Page 11932